## In re WAITE.

### (District Court, N. D. Iowa. June 14, 1897.)

1. OFFICERS OF UNITED STATES—ACTS IN OFFICIAL CAPACITY—STATE PROSECUTIONS.

    An officer or agent of the United States, engaged in the performance of a duty arising under the laws and authority of the United States, is not liable to a criminal prosecution in the courts of a state for acts done by him in his official capacity.

2. SAME—RELEASE ON HABEAS CORPUS.

    When an officer of the United States is sought to be held in a state court for punishment for acts done in the performance of his duty to the United States, it is not a sufficient reason for refusing his release upon habeas corpus that he may raise the question of his immunity in the state court, and carry the matter by writ of error to the United States supreme court, if necessary, since the operations of the federal government would in the meantime be obstructed by the confinement of its officer.

3. SAME—CONSTITUTIONAL LAW—STATE AUTHORITY—PENSION EXAMINERS.

    In matters committed to the sole jurisdiction of the United States, statutes of the state have no application, and a criminal prosecution for violation of a state statute cannot be based upon acts done in such matters, but the determination of the rightfulness of such acts depends wholly upon the laws of the United States, and belongs to their courts. Accordingly *held*, that the statute of Iowa (Code, § 3871), providing for the punishment of one who maliciously threatens to accuse a person of a crime in order to compel him to do an act, has no application to a United States pension examiner, charged with the duty of investigating fraudulent pension claims.

4. SAME.

    Petitioner, a duly-authorized United States pension examiner, was indicted and convicted in a state court for an alleged violation of the statute of Iowa for the punishment of threats to accuse a person of crime in order to compel him to do an act, based upon his acts while investigating, in the course of his duty, an alleged fraudulent claim. His conviction was affirmed by the state supreme court, and he applied to the federal court for his release upon habeas corpus. *Held*, that he should be discharged.

Upon Writ of Habeas Corpus. Submitted on petition, return, reply, and evidence.

F. W. Reed, Daniel Fish, and Cato Sells, U. S. Dist. Atty., for petitioner.

Wilbraham & Upton and Botsford, Healy & Healy, for respondent.

SHIRAS, District Judge. The facts out of which this proceeding has arisen, briefly stated, are as follows: Early in the year 1893 facts had come to the knowledge of the commissioner of pensions tending to show that many frauds were being perpetrated upon the United States in connection with claims for pensions and for increase of pensions which were represented by George M. Van Leuven, as pension attorney, whose office was located at Lime Springs, Howard

county, Iowa. For the purpose of having a thorough examination made of these frauds, and tracing home the responsibility therefor, it was deemed advisable by the pension bureau that a number of special examiners, in the employ of the bureau, should be detailed to undertake the necessary investigations, and a detail was made of some seven examiners, who were known as the "Van Leuven Commission." At the head of this detail or commission was placed the petitioner, Edward F. Waite, who for some years had been in the employ of the pension bureau as a clerk, and who had, under date of June 29, 1887, been commissioned as an examiner, the commission reciting that:

"In virtue of the authority vested in me by section 4744 of the Revised Statutes and the amendments thereto, Edward F. Waite is hereby detailed to examine claims made under and by virtue of the provisions of the pension law, and to aid in prosecuting any person violating the same, in accordance with such instructions, both general and special, as shall be given to him from time to time. Under the provisions of the above-named section as amended he has the power to administer oaths, and take affidavits, in the course of any such examination.        John C. Black, Commissioner."

Section 4744, Rev. St., enacts that:

"The commissioner of pensions, is authorized to detail from time to time clerks in his office to investigate suspected attempts at fraud on the government, through and by virtue of the provisions of the pension laws, and to aid in prosecuting any person, so offending, with such additional compensation as is customary in cases of special service: and any person so detailed shall have the power to administer oaths and take affidavits, in the course of any such investigation."

The pension bureau, for the purpose of directing examiners in the proper mode of performing their duties, has adopted a series of general instructions to special examiners, in which it is stated that:

"Examiners are expected and required to obtain whatever facts are necessary to prevent the payment of improper pensions, and to assist in bringing to punishment those who are knowingly guilty of violating the provisions of the pension laws."

In addition to these general instructions, verbal authority or instructions were given to Examiner Waite by the commissioner of pensions regarding the investigation of the Van Leuven cases to the general effect that a thorough examination must be had, in order to ascertain the truth; that in the view of the pension bureau it was of greater importance to the interests of the government and of the pensioners, if it appeared that frauds had been committed in which the pension attorney and members of the boards of surgeons were implicated, to bring home to these parties the commission of the wrong acts by them done, than to simply fasten the fraud upon an applicant for a pension, who might have been led into the commission of wrong acts by the inducements held out by the attorney representing him. Thus commissioned, authorized, and instructed by the pension bureau, acting under the authority conferred upon it by the congress of the United States, the so-called "Van Leuven Commission," under the direction of the petitioner, entered upon the discharge of the duties imposed upon them, and, briefly stated, the result of the investigation showed that Van Leuven

had been and was engaged in carrying on a systematic course of fraud and corruption in connection with his business as pension attorney, as is evidenced by the records of this court, which show that a large number of indictments were returned against him, upon which he was tried, or to which he pleaded guilty, and was by this court sentenced to imprisonment in the penitentiary.

During the progress of this investigation and under date of July 12, 1895, a list of pension claims was referred to "Special Examiner E. F. Waite, for use in connection with his investigation of certain charges against George M. Van Leuven, Jr., of Lime Springs, Iowa, the attorney of record." This list included the claims of Daniel P. Andrus for an increase of pension. The evidence shows that this matter was first placed in the hands of Examiner Perham, who visited Andrus, and obtained an affidavit from him with regard to three letters purporting to have been written by the pension claimant to his wife during the months of May, June, and July, 1864, and which had been filed in support of the claim. Subsequently the petitioner, Edward F. Waite, took charge of the matter, and visited Andrus at his home near Cresco, Iowa, for the purpose of interrogating him with regard to these letters, touching which doubt had arisen whether they had all been written on the day they bore date or not. When at the house of the claimant, Andrus, a discussion was had between Andrus, his wife, and Examiner Waite, with regard to the letters, touching the details of which discussion the parties are not in entire accord in their testimony. At the time of this interview, Mr. Waite testifies that his belief was that one at least of the letters in question was not genuine, and that doubt existed as to the other two, and his purpose in seeking the interview with the claimant Andrus was to induce him to admit the fraud, if in truth it existed, or, if he would not do so, then to get an affidavit specifically identifying the letters, and affirming the genuineness thereof, so that, in case it should afterwards be shown that the letters, or either of them, were fraudulent, there would be no difficulty in procuring an indictment against Andrus for perjury in case the proper authorities should deem it advisable to proceed against him for that offense. The final result of the interview at the house of Mr. Andrus was that he refused to make any affidavit with regard to the letters until he could see and consult with his attorney, who resided in Cresco. Mr. Waite then offered to take him in the vehicle in which he himself had come from Cresco to the attorney's office, which offer Mr. Andrus accepted, his own team being at the time away from his place; and the two parties then drove, with the same team, to Cresco, where Mr. Andrus consulted with his attorney, and then refused to make any affidavit, except one affirming the genuineness of the letters, which was prepared for him, and by him signed and sworn to before the examiner, and the parties separated. Shortly afterwards an indictment was procured in the district court of Howard county, charging Examiner Waite with having violated the provisions of section 3871 of the Code of Iowa, which provides for the punishment of one who maliciously threatens to accuse a person of a crime in order to compel him to do an act against his

will. Upon this indictment the defendant thereto was arrested, put upon trial before a jury, a verdict of guilty was rendered, upon which the court sentenced him to pay a fine of $250, and upon error the supreme court of the state affirmed the sentence. State v. Waite (Iowa) 70 N. W. 596. Pending the hearing before the supreme court, the defendant was released upon bail, but upon the affirmance of the judgment of the district court he surrendered himself to the sheriff of Howard county, who took him into custody, under the sentence imposed, which, in pursuance of the provisions of the Code of Iowa, directed that if the fine imposed was not paid the defendant should be imprisoned. Thereupon Waite filed in this court a petition for a writ of habeas corpus, averring that he was unlawfully imprisoned by the sheriff of Howard county. The writ was issued directed to A. C. Campbell, sheriff, and thereto due return has been made, it being averred by the respondent that he, as sheriff of Howard county, holds the petitioner, Waite, in his custody under a writ duly issued for the enforcement of the sentence of the district court of Howard county. To the return a replication was filed, setting forth the authority under which Waite acted, and claiming that under the facts the state court had no jurisdiction in the premises, and that the sentence and all proceedings upon which it was based were wholly void. Upon the pleadings and the evidence adduced by the parties the case has been submitted.

Upon behalf of the respondent it is urged that the case is not one in which the writ of habeas corpus is a proper remedy; that the petitioner can avail himself of a writ of error from the supreme court of the United States to the supreme court of the state on the ground that the petitioner claimed a defense or protection under the laws of the United States which was denied him by the ruling of the state court, and therefore it is a case of which the supreme court of the United States can take jurisdiction upon error, and consequently this court should not undertake to deal with the matter by means of the writ of habeas corpus. The general principle is well settled that this writ must not be used simply to serve the purposes of a writ of error. Davis v. Beason, 133 U. S. 333, 10 Sup. Ct. 299; In re Frederich, 149 U. S. 70, 13 Sup. Ct. 793. It is equally well settled that where the basis of the relief sought by means of the issuance of a writ of habeas corpus is that the court under whose sentence or judgment the petitioner is deprived of his liberty had no jurisdiction in the premises, then the courts of the United States may grant the writ. Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734; In re Frederich, 149 U. S. 70, 13 Sup. Ct. 793; In re Nielsen, 131 U. S. 176, 9 Sup. Ct. 672; In re Wood, 140 U. S. 278, 11 Sup. Ct. 738. The grounds upon which relief is sought in this case bring it within the rule recognized in the cases last cited, and this court is justified in proceeding with the hearing and determination of the question whether the state court had jurisdiction to hear and determine the criminal prosecution wherein the sentence was imposed under which the petitioner is now deprived of his liberty. The sole question properly arising before this court is that of the jurisdiction of the district court of Howard county,

and under the facts established by the evidence adduced the first matter for consideration is whether an officer or agent of the United States, engaged in the performance of a duty arising under the laws and authority of the United States, is liable to a criminal prose- cution in the courts of the state for acts done by him in his offi- cial capacity. This presents a matter of moment much beyond the mere question of the detention of the liberty of the petitioner as an individual. Broadly stated, it involves the proposition whether the operations of the government of the United States in matters within its sole control, and which operations of necessity must be carried forward by means of officers and agents duly appointed, can be interfered with by criminal proceedings instituted in the state courts, and based upon acts done by such officers or agents within the scope of the duties imposed upon them. By this it is not meant to assert that because a person is an officer or agent of the federal government he is thereby excepted out from the juris- diction of the state or the binding force of its laws. The mere fact that when the acts by him done were done he was an officer of the United States, charged with certain duties to that government, will not afford him immunity from prosecution under the laws of the state, nor will the mere fact that he claims that the acts done were within the line of his official duty afford him protection, if the acts are such as to show that the claimed immunity is a mere subter- fuge, and that under no fair consideration of his official duty could he have assumed that he was acting in his official capacity when the acts complained of were done by him. But when an officer of the United States is charged with the performance of certain duties under the laws of the United States, and in the general perform- ance thereof he does acts which it is claimed are in excess of his proper duty, or which are violative of the rights of other citizens, the question is whether a prosecution therefor can be sustained in the state courts, when it is apparent that the institution and main- tenance thereof may interfere with the enforcement of the laws of the United States, or with the operations of that government. Un- der this aspect of the question, the point is not what the rights of individual citizens might require for their proper protection, but whether the government of the United States, acting in the inter- est of the entire community, has not the right to assert that its operations within the jurisdiction conferred by the constitution, and wherein it is supreme and paramount, cannot be interfered with under the laws of the state; and that to prevent such interference it must be held that an officer or agent of the United States, when engaged in the performance of his official duties, is not amenable to the laws or courts of the state in a criminal prosecution based upon acts by him done in connection with his official duties. If in the performance of these duties the officer so acts as to violate his duty to the United States, that government, and not the state, is the proper party to call him to account. If the acts done are violative of the rights of individuals, a civil action for damages may be main- tained, or protection may be sought under the laws of the United States, and thus a remedy may be afforded to the citizen without

bringing the federal and state governments into conflict, or without unduly interfering with the operations of that government under whose authority the officer is acting.

In the case of Tennessee v. Davis, 100 U. S. 257, this general subject was before the supreme court. In that case James M. Davis was indicted for murder in a court of the state of Tennessee, and he petitioned for a removal of the case into the federal court upon the ground that when the killing was done he was a deputy collector of internal revenue of the United States; that the act was in self-defense, he having been assaulted when endeavoring to seize an illicit distillerv; and the right of removal was based upon the provisions of section 643, Rev. St. In dealing with the question of the right of congress to provide for the removal into courts of the United States of criminal cases based upon state laws, in which a defense is set up under the provisions of the laws of the United States, the supreme court said:

"We come, then, to the inquiry most discussed during the argument, whether section 643 is a constitutional exercise of the power vested in congress. Has the constitution conferred upon congress the power to authorize the removal from a state court to a federal court of an indictment against a revenue officer for an alleged crime against the state, and to order its removal before trial, when it appears that a federal question or a claim to a federal right is raised in the case, and must be decided therein? A more important question can hardly be imagined. Upon its answer may depend the possibility of the general government's preserving its own existence. As was said in Martin v. Hunter, 1 Wheat. 363: 'The general government must cease to exist whenever it loses the power of protecting itself in the exercise of its constitutional power.' It can only act through its officers and agents, and they must act within the state. If, when thus acting, and within the scope of their authority, those officers can be arrested and brought to trial in a state court for an alleged offense against the law of the state, yet warranted by the federal authority they possess, and if the general government is powerless to interfere at once for their protection,—if their protection must be left to the state court,—the operations of the general government may at any time be arrested at the will of one of its members. The legislation of the state may be unfriendly. It may affix penalties to acts done under the immediate direction of the national government, and in obedience to its laws. It may deny the authority conferred by those laws. The state court may administer not only the laws of the state, but equally federal law, in such a manner as to paralyze the operations of the government. And even if, after trial and final judgment in the state court, the case can be brought into the United States court for review, the officer is withdrawn from the discharge of his duty during the pendency of the prosecution, and the exercise of acknowledged federal power arrested. We do not think such an element of weakness is to be found in the constitution. The United States is a government extending over the whole territory of the Union, acting upon the states and upon the people of the states. While it is limited in the number of its powers, so far as its sovereignty extends it is supreme. No state government can exclude it from the exercise of any authority conferred upon it by the constitution, obstruct its authorized officers against its will, or withhold from it for a moment the cognizance of any subject which that instrument has committed to it."

In the noted case of In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, the supreme court reviewed at length many of the cases in which writs of habeas corpus had been granted in favor of parties held under indictments in state courts for acts done under the authority of the laws of the United States, and also gives the progress of congressional legislation upon the subject; and the conclusion reached

was that when Neagle took the life of Terry he was acting as a deputy marshal under authority of the law, "and that he is not liable to answer in the courts of California on account of his part in that transaction." In the course of the opinion in that case the supreme court cite with approval the language used by Mr. Justice Grier in Ex parte Jenkins, 2 Wall. Jr. 521, Fed. Cas. No. 7,259, wherein the marshal was arrested under a warrant of a justice of the peace for assault with intent to kill, to the effect that:

"The authority conferred on the judges of the United States by this act of congress gives them all the power that any other court could exercise under the writ of habeas corpus, or gives them none at all. If, under such a writ, they may not discharge their officer when imprisoned 'by any authority' for an act done in pursuance of a law of the United States, it would be impossible to discover for what useful purpose the act was passed."

In the case of Tennessee v. Davis, the supreme court decided that congress could lawfully provide for the removal from state to federal courts of all criminal proceedings wherein it might be sought to charge one acting under authority of the United States with a criminal violation of the state laws, and in Re Neagle the supreme court held that by means of the writ of habeas corpus all such cases can be taken from a state court into a federal court, and in Ex parte Royall the supreme court held that it was discretionary with the United States court to determine whether it would grant the writ before a trial in the state court, or await the action of the state court upon the matter; that discretion, however, to be subordinated to any special circumstances requiring immediate action. All these cases hold clearly, however, that when it is made to appear that an officer of the United States, or one acting under the authority of a law of the United States, is sought to be held in a state court for punishment under the provisions of a statute, for an act done while in the performance of the duty he owed to the United States, the federal courts, either by removal, where the statute provides for that mode, or by writ of habeas corpus, must assume jurisdiction over the matter, and prevent further action in the state court, and the principle underlying the cases is that the state has not jurisdiction over a person when he is acting under the authority of the United States. It is no sufficient answer to this position to urge that protection can be given to the one acting under the authority of the United States by requiring him to assert his defense in the state court, and then, if the decision is against him, to carry the matter by writ of error to the supreme court of the United States. This is a proper course to pursue when in a suit between individuals, affecting only private interests, a right is asserted based upon the constitution or laws of the United States, for in such case the operations of the government are not impeded or obstructed. If, however, it should be held that the officers of the United States, when engaged in the performance of their official duties, can be arrested by a warrant from a state magistrate, or from a court of record of the state, upon the charge that in the performance of the duties imposed upon him the officer has violated some provision of the state statutes, it is apparent that the enforcement of the laws of the United States and the carrying on of the operations of the

government may be seriously embarrassed or wholly arrested. Even though it be true that the officer, by making the defense in the state court, can ultimately obtain the protection of the laws of the United States, the injurious effect in the way of impeding the enforcement of the laws of the United States would not be obviated, for, as is pointed out by the supreme court in Tennessee v. Davis, supra, during the time the officer is under arrest or is engaged in defending himself in the state court he is withdrawn from the discharge of his duty, and the exercise of acknowledged federal power is arrested. Hence the justification of the true rule that it cannot .be permitted to the state to assert jurisdiction over one acting under the authority of the United States for acts by him done in furtherance of the duty he owes to the federal government, upon the assumption that these acts are violations of a state statute.

But there is another view that may be taken of the general question, which perhaps may show even more clearly the correctness of the claim that the state court was without jurisdiction, and that is that the provision of the state law under which the petitioner was indicted and tried has no application to a case wherein an examiner of pensions, acting under the laws of congress, is endeavoring to ascertain the facts with regard to claims for pensions pending under the laws of the United States. It will not be questioned that to sustain a criminal prosecution the statute upon which it is based must be binding upon the person, and applicable to the acts which form the basis of the prosecution. If, when the acts were done, the same were not within the plane of the jurisdiction of the state, then the statute of the state has no application thereto, and it cannot be predicated of the acts that they constitute violations of the statutes of the state. Thus in Re Loney, 134 U. S. 372, 10 Sup. Ct. 584, it appeared that Wilson Loney had been placed under arrest upon a warrant issued by. a justice of the peace in the city of Richmond, Va., charging him with perjury in giving his deposition before a notary public in a case of a contested election of a member of the house of representatives of the United States, the proceeding being based upon the statute of the state of Virginia, which enacts that, "if any person, to whom an oath is lawfully administered on any occasion, willfully swears 'falsely on such occasion, touching any material matter, or thing, he is guilty of perjury." The circuit court of the United States granted a writ of habeas corpus, and upon the hearing released the petitioner upon the ground that the statute of Virginia did not apply to the facts, and the case was thence carried to the supreme court, which affirmed the ruling, and in the course of the opinion it was said:

"It is essential to the impartial and efficient administration of justice in the tribunals of the nation that witnesses should be able to testify freely before them, unrestrained by the legislation of the state, or by fear of punishment in the state courts. The administration of justice in the national tribunals would be greatly embarrassed and impeded if a witness testifying before a court of the. United States, or upon a contested election of a member of congress, were liable to prosecution and punishment in the courts of the state upon a charge of perjury, preferred by a disappointed suitor or contestant, or instigated by local passion or prejudice."

And the conclusion reached was that:

"The courts of Virginia having no jurisdiction of the matter of the charge on which the prisoner was arrested, and he being in custody, in violation of the constitution and laws of the United States, for an act done in pursuance of those laws by testifying in the case of a contested election of a member of congress, law and justice required that he should be discharged from such custody, and he was rightly so discharged by the circuit court on writ of habeas corpus."

It will be noticed that neither the circuit nor supreme court examined into the question whether the prisoner had or had not sworn falsely in giving his testimony. The point of the decision was that the statute of Virginia, under which the prisoner was held, was not applicable to the case, and therefore there was no jurisdiction in the state courts, and this holding was based upon the proposition, in support of which authorities are cited in the opinion, that with relation to such matters as congressional elections, proceedings under the United States bankrupt acts, or matters connected with the public lands the state statutes for the punishment of perjury do not apply, because these are matters outside of state control and jurisdiction, and within federal control.

It will not be questioned that the whole subject of the pensions paid to the soldiers and sailors of the United States is a matter wholly within federal jurisdiction, and wholly outside the plane of state control. The state cannot, either by legislative enactment or by judicial action, create or deny the right to a pension under the laws of the United States, nor direct, prescribe, or control the mode of obtaining pensions, the manner of submitting evidence in support thereof, the kind or amount of evidence needed to establish a claim, or the methods to be followed by the United States in examining into claims presented, or the safeguards to be adopted to prevent frauds upon the federal government. The government of the United States has created the pension system now in force; and the whole thereof, in substance and in form of procedure, is without the plane of state control. When D. P. Andrus filed in the pension office his application for an increased pension, he then invoked and set in action the machinery of the pension system, and subjected himself to the provisions of the laws of congress and the rules established by the pension bureau upon this subject-matter, and in all things connected with the claim thus presented by him he was subject to the laws of the United States, and, on the other hand, was entitled to the protection of the United States in all that he did or sought to do in the prosecution of his pension claim. If an indictment had been procured against him in the district court of Howard county charging him with perjury, or some other violation of the statutes of the state, in the testimony he gave in support of his claim for a pension, and he had been arrested thereon, and thereupon he had applied to this court to be released from this arrest by means of a writ of habeas corpus, can there be any question that it would have been the duty of this court to have granted the writ, and upon the hearing to have discharged him, upon the ground that the laws of the state have no application to the acts of a party who is pro-

ceeding under the pension system of the United States, and where the acts are done in furtherance of the application for a pension. Under the ruling of the supreme court in Re Loney, supra, it is clear that in the supposed case Andrus would have been entitled to his discharge on the ground that the state court had no jurisdiction in the premises, for the reason that the statutes of the state are not applicable to the conduct of a party in seeking to secure a pension under the laws of the United States.

The legality of the acts of the pension claimant in support of his claim cannot be determined by the state statutes. They are not the test of what he may or may not do. So long as the acts of the pension claimant, in support of his claim, do not violate the provisions of the laws of the United States, he cannot be held to account criminally therefor. If the act he does violates the statutes of the United States, he can be held liable therefor, even though the statute of the state might justify the act. The rule deducible from the decided cases, and well sustained on principle and authority, is that when a person seeks the benefit of the laws of the United States upon some matter wholly within federal control, as where one applies for a discharge in bankruptcy, or seeks to purchase or enter any of the public lands of the United States, or applies for a pension or for an increase thereof under the pension system of the United States, the test of the legality of the acts by him done in furtherance of the relief sought or of the claim made is to be found in the laws of the United States. It is clear that the state cannot directly legislate upon these matters, because they are outside of the plane of state control and jurisdiction, and therefore the general statutes of the state cannot, by judicial interpretation, be made applicable thereto.

If, then, in the supposed case, Andrus would have been entitled to a discharge from arrest upon the warrant of the state court on the ground that he was not amenable to the jurisdiction of the state because the act done for which it was sought to hold him criminally liable was done in connection with and in furtherance of a claim for an increased pension by him presented under the laws of the United States,—a matter wholly within federal control, and wholly without state control or jurisdiction,—is it not equally clear that the state law cannot be held applicable to the acts done by the pension examiner in connection with the claim in question? It would be a curious anomaly to hold that Andrus, the pension claimant, was not amenable to the state jurisdiction for acts by him done in furtherance of his claim, but that the pension examiner, acting under the authority of the United States, when engaged in the examination of the validity of the Andrus claim, was amenable to the state jurisdiction for acts by him done in furtherance of the duty imposed upon him as an agent of the pension bureau. The state statutes do not furnish the test of the legality or criminality of the acts done by the pension claimant in furtherance of the claim by him made under the laws of the United States governing the granting of pensions, nor of the acts done by the pension examiner when engaged in investigating the merit of the claim presented under the

pension laws. When the pension claimant, Andrus, filed his claim for an increase of pension, he then invoked the benefit of the laws of the United States creating the pension system, and he became entitled to the benefits of the system, in case he sustained his right to an increased rate, and he became entitled to the protection of the laws and governmental powers of the United States while engaged in prosecuting the claim by him filed. In what he did, or sought to do, in support of or in furtherance of the claim by him asserted under the pension system of the United States, he was not lawfully subject to be impeded or embarrassed by criminal proceedings instituted under the statutes of the state based upon acts done by him in support of his claim; and if for an act thus done he had been arrested in a criminal proceeding instituted in a state court, he would have been entitled to his discharge from such arrest upon a writ of habeas corpus issued by this court. The immunity, however, which he could lawfully claim under these circumstances, based upon the principle that the whole subject-matter of pensions, created by the laws of the United States, is outside of the plane of state jurisdiction, must be equally applicable to the officer or agent of the United States charged with the duty of examining into the validity of the claim thus asserted under the laws of the United States. No other conclusion is permissible, and it thus appears that the statutes of the state of Iowa are not applicable to the acts done by a pension examiner when engaged in the investigation of the validity of a claim preferred by one who seeks the benefit of the pension bounty provided for by the laws of the United States, the acts done being in furtherance of the duty imposed upon the examiner by the laws of the United States.

But it is said that of necessity there is placed upon the state court the duty of determining in each case whether it has jurisdiction; that this necessitates inquiry into the facts of the particular case; that the duty of inquiry must be supplemented by the right to determine and adjudicate on the question of jurisdiction; that in this case the district court of Howard county held that it had jurisdiction, which ruling has been affirmed by the supreme court of the state; and that the only remedy, if any exists, is by writ of error to the supreme court. The state court proceeded upon the theory that the statute of the state was applicable to the acts of the examiner, acting under the authority of the United States, in investigating the validity of the claim made by Andrus for an increase of pension, and the genuineness of the letters filed in support of the claim, and, making the state statute the guide to the examiner in the performance of the duties he owed to the government of the United States, the court held that the acts done violated the state statute, and rendered the examiner amenable to the punishment provided for in that statute. In reaching this conclusion the supreme court of the state held that in the performance of his duties as an examiner appointed under the laws of the United States he had no right to resort to duress or intimidation for the purpose of procuring information; it being further said in the opinion that: "The officers of the general government owe obedience to the laws of this

81 F.—24

state when within its limits, and may be detained and prosecuted for the commission of felonies thereunder." By this it is made clear that the state court undertook to hear and determine the question whether the laws of the United States justified the acts done by the examiner in his efforts to obtain information touching the validity of the claim preferred by Andrus for an increase of pension, and, reaching the conclusion that he had overstepped the proper limits of his authority, the court, in effect, held that he had thereby become amenable to a prosecution under a state statute. In effect, the state court undertook to punish the examiner under the provisions of the state statutes for acts done by him as an agent of the United States, the acts being intended to further the duty imposed upon the examiner by the laws of the United States, upon the ground that in doing the acts the examiner exceeded the authority conferred upon him by the laws of the United States. It is not questioned that if a person who is an officer or agent of the United States commits a felony in a matter aside from that committed to his care as an officer of the United States, he may be prosecuted therefor in the state courts, but in such case he is not proceeded against as an officer or agent of the United States. If, however, he is proceeded against for acts done in his official capacity, on the theory that what he did was not required in the performance of his duty, but was in excess thereof, then it is clear that the vital question is the extent of the authority conferred upon him by the laws of the United States, and it certainly is the law that the officers and agents of the United States, such as the marshals, the deputy marshals, post-office inspectors, pension examiners, and the like, cannot be called to account before the courts of the states for the manner in which they perform the duties intrusted to them. Suppose it were true that the examiner in this case, in his efforts to get at the truth with regard to the Andrus claim, did threaten Andrus that if he did not own up to the fraud charged against him he would be prosecuted for perjury or other crime. What right has the state of Iowa to inquire into the mode or manner in which the United States, through its officers and agents, administers the pension system of the United States? If the examiner, while conducting the investigation into the validity of the claim preferred by Andrus, may have overstepped the limits he should have observed in the examination of Andrus (which, however, I do not assert nor believe), it is for the government of the United States to call him to account, and not for the state of Iowa. It is true that, when in the state of Iowa, the officers and agents of the United States owe obedience to the laws of the state, but they, in common with all others, owe obedience to such laws only in matters to which the state laws are properly applicable. Thus, if the legislature of the state should enact that pension examiners appointed by the United States, when engaged in the performance of their duties in Iowa, should not have the right to examine applicants for pensions with regard to their claims, or in such examination should not have the right to call for papers or letters in possession of the claimant, or should not have the right to warn a claimant of the dangers he would expose himself to if he

presented a false claim, is it not clear beyond question that all such attempted legislation would be held utterly void, because the sub-ject-matter of pensions is wholly without the plane of state control, and for the further reason that it is not within the province of the state to define, prescribe, or limit the duties or the mode of perform-ance thereof of officers and agents of the United States? That which is beyond the plane of state jurisdiction by direct legislation can-not be brought within such plane by indirection, and therefore it is that the officers and agents of the United States cannot be held re-sponsible, under the criminal statutes of the state, for acts done in their official capacity, because, if that were permitted, it would be possible to control or nullify the action of the authorities of the United States by the action, legislative and judicial, of the several states. The question which marks the limit of the state jurisdic-tion is whether the person sought to be called to account was acting under the authority of the United States when the acts complained of were done, in and about a subject-matter within federal jurisdic-tion. The mode or manner in which the officer or agent undertakes to perform the duty imposed upon him by the laws or authority of the United States is not a matter of state cognizance, for the crim-inal statutes of the state are not applicable to acts done within the plane of federal jurisdiction, and under the authority of the United States.

Whenever it is made to appear in a criminal case pending in the state court that the acts charged in the indictment were done by the defendant as an officer or agent of the United States in and about a matter within federal control, and when engaged in the perform-ance of the duties imposed upon him by the laws or authority of the United States, then it is made to appear that the state court is asked to assume a jurisdiction which it cannot rightfully exer-cise; and if that court entertains the case, and proceeds to adjudi-cate on the question of the extent of the authority possessed by the officers of the United States, and the mode and manner in which his official duty has been performed, testing the same by the pro-visions of state statutes not applicable to the subject-matter, it pro-ceeds at the peril of having its jurisdiction questioned and denied either by writ of error to the supreme court of the United States or by a writ of habeas corpus from either of the courts of the United States.

In the present case the evidence shows beyond possible question that Edward F. Waite was duly commissioned as a special examiner of the pension bureau; that he was charged specially with the duty of examining into the pension claims filed by residents of Northern Iowa and Minnesota through George M. Van Leuven, as their at-torney, which included the claim for an increase of pension filed by D. P. Andrus; that in pursuance of the authority of the United States he went to Andrus' house for the purpose of examining him about his claim; that during the whole interview between Waite and Andrus, Waite was acting in his capacity of pension examiner; that in all he did or said at that interview he was seeking to get at the truth with regard to the claim for pension, and the genuine-

ness of the letters filed in support thereof; and therefore it is made clear beyond question that during that entire interview, and in all that he did or said, he was acting in his official capacity under the authority of the United States, in and about a subject-matter wholly within federal control and jurisdiction, and therefore for the mode or manner in which he performed the duty imposed upon him by the laws of the United States he cannot be called to account in a criminal case brought in a state court, based upon provisions of a state statute. For any dereliction of duty in the mode and manner of conducting the investigation which he was empowered to make under the authority of the United States he is amenable to the laws of the United States, but not to those of the state, for, as is said, in effect, by the supreme court in the Neagle Case, acts done under the authority of the United States cannot be violations of the criminal laws of the state. Being done within the general scope of the authority conferred by the laws of the United States, the rightfulness or validity thereof cannot be tested by the provisions of the criminal statutes of the state. Therefore, when it was made to appear to the district court of Howard county that it was sought in the case before it to hold Edward F. Waite liable for a criminal violation of the statutes of the state for acts by him done as a special examiner of pensions appointed under the laws of the United States, when he was engaged in the performance of the duties imposed upon him as an officer or agent of the United States, then it was made to appear to that court that it had no jurisdiction to further proceed in the case or to further restrain the liberty of the defendant therein for the reasons:

First. That it thus appeared that it was being attempted to apply the criminal provisions of the statute of the state to acts done and proceedings had under the laws of the United States creating and regulating the pension system of the United States, which system, as to substance and mode of procedure, lies wholly without the plane of state jurisdiction; second, that it was thus made to appear that the criminal process of the state was being used to interfere with, impede, and embarrass the operations of the government of the United States in connection with a subject-matter touching which the laws of the United States are not only paramount and supreme, but touching which the jurisdiction of the United States is exclusive; and, third, that it was thus made to appear that it was sought to subject an officer and agent of the United States to punishment under the criminal statutes of the state for acts by him done under the authority of the United States in connection with a subject-matter wholly within federal control and jurisdiction. In thus undertaking to review the actions of the district court of Howard county, affirmed as it has been by the opinion of the supreme court of the state, this court has been called upon to exercise a very delicate duty, but it is one imposed upon this court by the laws of the United States, and which cannot be evaded, when the liberty of a citizen of the United States is involved in the controversy. Having reached the conclusion that for the reasons assigned the district court of Howard county was without jurisdic-

tion in the premises, it follows that in holding the petitioner to trial before a jury, in receiving a verdict of guilty in the case, in entering sentence thereon, in holding the petitioner to bail pending the appeal to the supreme court, and in endeavoring to enforce the sentence by committing the petitioner to the custody of the sheriff, the state court and its officers acted without due authority or warrant of law, for want of jurisdiction in the premises, and, as it thus appears that the petitioner is deprived of his liberty without due warrant of law, he is entitled to his discharge as prayed for.