UNITED STATES ex rel. DRURY et al. v. LEWIS, Jail Warden.

(Circuit Court, W. D. Pennsylvania. April 28, 1904.)

1. FEDERAL COURTS—JURISDICTION—HABEAS CORPUS.

A court or judge of the United States has jurisdiction to grant a writ of habeas corpus for the purpose of reviewing the legality of the restraint of liberty of any prisoner held in custody under the authority of a state, whenever it is alleged that he is in custody for an act done or omitted in pursuance of a law of the United States, or in violation of the Constitution or of a United States law or treaty.

2. UNITED STATES SOLDIERS—OFFENSES—STATES—CIVIL JURISDICTION.

Under Rev. St. § 1342, art. 59 [U. S. Comp. St. 1901, p. 955], providing that when any officer or soldier is accused of a capital crime, or of an offense against the person or property of any citizen of any of the United States punishable by the laws of the land, the commanding officer and the officers of the regiment, troop, battery, etc., to which the person so accused belongs, except in time of war, shall, on application duly made, use their utmost endeavor to deliver him to a civil magistrate in order to bring him to trial. Held, that such enactment was a distinct recognition by Congress of the general jurisdiction in time of peace of the civil courts of the state over persons in the United States military service accused of offenses against the state.

3. SAME—HOMICIDE—MILITARY GUARD—ARRESTS.

Where, on a writ of habeas corpus to obtain the discharge of two members of the United States army from an indictment for murder, found by the courts of the state where the offense was committed, it appeared that the shooting of deceased occurred in the streets of a city, outside the military reservation, while petitioners were endeavoring to arrest deceased for depredations committed on such reservation, but the evidence was conflicting as to whether the shooting was done while deceased was endeavoring to escape or after he had stopped, thrown up his hands, and offered to surrender, the determination of whether the shooting was justifiable was within the exclusive jurisdiction of the state courts.

---

¶ 1. Jurisdiction of federal courts in habeas corpus, see note to In re Huse, 25 C. C. A. 4.

John C. Haymaker and John Marron, for the Commonwealth of Pennsylvania.

James S. Young, U. S. Atty., for respondents.

ACHESON, Circuit Judge. On the 8th day of February, 1904, the date of the issuing of this writ of habeas corpus, and at the time the writ issued, the petitioners, Ralph W. Drury and John Dowd, were in the custody of Edward Lewis, warden of the jail of Allegheny county, Pa., by virtue of a commitment issued on that day out of the court of oyer and terminer for the county of Allegheny and commonwealth of Pennsylvania. This commitment was based on an indictment found on December 16, 1903, in the said court of oyer and terminer, which indictment charges these petitioners, in the first count thereof, with the murder of one William H. Crowley, and in the second count thereof with the manslaughter of the said Crowley, on September 10, 1903. The petitioners had been at large on recognizance in the sum of $5,000, taken by the court of oyer and terminer, conditioned for their appearance in that court to answer the indictment. With the consent of the petitioners, and by prearrangement with their bail, they were surrendered by their bail on the 8th day of February, 1904, for the purpose of enabling them to apply for and prosecute this writ of habeas corpus.

The case disclosed by the evidence submitted on the hearing of this writ is as follows: On September 10, 1903, Ralph W. Drury was a commissioned officer of the United States army, of the rank of second lieutenant, and had under his command a detachment of 20 enlisted men, of whom John Dowd was one, stationed at Allegheny Arsenal, in the city of Pittsburg, in Allegheny county, Pa.; this arsenal being a subpost of Ft. Niagara, N. Y. From time to time before September 10, 1903, some copper down spouts and eave-troughs had been stripped from some of the buildings on the arsenal grounds, and the material stolen, and other depredations, such as the breaking of window lights, had been committed on the arsenal property. Lieut. Col. Robertson, the commanding officer at Ft. Niagara, on the occasion of an inspection of Allegheny Arsenal in July, 1903, had directed Lieut. Drury to use his best endeavors to stop the depredations, and to that end ordered him to establish a patrol of the guards day and night upon the arsenal grounds, and to apprehend and arrest any person or persons committing depredations on the arsenal property. Shortly before 10 o'clock on the morning of September 10, 1903, having received word that some persons were stealing copper from one of the buildings on the arsenal grounds, Lieut. Drury took John Dowd, then on guard duty, and another private soldier (each of the latter being armed with a rifle and ammunition), and, passing out of the arsenal grounds through the gate on Butler street, the three proceeded by way of Butler street and Almond alley toward the Allegheny Valley Railroad. Drury informed the two men of the reported stealing of copper, and instructed them to continue down Almond alley and arrest any person coming from the arsenal. Drury himself left Almond alley at the corner of Willow street, and went by Willow street to Fortieth street (which runs along, but outside of, the arsenal wall), and proceeded down Fortieth street to its foot, where were congregated three or four half-grown boys or young

men, among whom was William H. Crowley, aged about 19 or 20 years. These persons fled in different directions when they saw Lieut. Drury approaching. Crowley ran from the foot of Fortieth street away from the arsenal property in the direction of Forty-First street, keeping on or near the Allegheny Valley Railroad. When he was about 100 yards from the arsenal wall, Crowley was shot by Dowd, who aimed and fired his rifle at Crowley.' At the time of the shooting, Drury, Dowd, and Crowley were all off the ground belonging to the United States. Each one of the three then stood either upon a street of the city, on the Allegheny Valley Railroad, or on private property. The rifle ball struck Crowley's left thigh, inflicting a mortal wound, from which he died on the evening of the same day, September 10, 1903.

Thus far the facts are not open to dispute under the testimony. But as to the circumstances attending the shooting of Crowley the evidence is conflicting, and leads to opposite conclusions of fact as one or other version of the affair given by the witnesses is accepted. Dowd testifies, and the petitioners have produced other evidence tending to show, that as Crowley fled he was called on several times by Dowd, who followed him, to halt, with warning that unless he halted Dowd would fire; that Crowley did not halt, but continued his flight, and to prevent his escape behind or through a lumber pile Dowd fired, and that Drury did not order Dowd to fire, and was not connected with the shooting save by the fact that he ordered the arrest of any person coming from the arsenal. On the other hand, two witnesses who were present (Mrs. Long and Miss Terwillerger) testify that before the shot was fired Crowley stopped, turned around, and, facing the pursuing soldier (Dowd), threw up his hand, said, "Don't shoot," "I will come back," or "I will give up," and just then Lieut. Drury said "Fire!" and Dowd fired the shot that killed Crowley. The testimony of at least one other witness tends to corroborate the account of the transaction given by the two named women as above recited. It is not for me to say whether or not the witnesses who have testified thus on the part of the commonwealth are mistaken.

In view of all the evidence herein, should this court interfere to prevent the trial of the petitioners upon the indictment in the state court—take the petitioners out of the custody of the authorities of the state, and discharge them finally without trial by any civil court in the regular administration of justice? This is the question which confronts me. Undoubtedly, a court or judge of the United States is authorized to grant a writ of habeas corpus for the purpose of inquiring into the cause of the restraint of the liberty of any prisoner held in custody under the authority of a state, whether by virtue of an indictment or otherwise, whenever it is in due form alleged that he is in custody for an act done or omitted in pursuance of a law of the United States, or is in custody in violation of the Constitution or of a law or treaty of the United States, and to proceed in a summary way to determine the facts, "and thereupon to dispose of the party as law and justice require." But in the exercise of this authority the courts and judges of the United States are to be governed by the principles laid down by the Supreme Court in the cases of Ex parte Royall, 117 U. S. 241, 6 Sup. Ct. 734, 29 L. Ed. 868, Whitten v. Tomlinson, 160 U. S. 231, 16 Sup. Ct. 297, 40

L. Ed. 406, and Baker v. Grice, 169 U. S. 284, 18 Sup. Ct. 323, 42 L. Ed. 748. The doctrine of those cases is that, except in instances of peculiar urgency, or where there is no jurisdiction in the state court to try the prisoner for the offense charged (as were the cases In re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55, In re Waite [D. C.] 81 Fed. 359, and Ohio v. Thomas, 173 U. S. 276, 19 Sup. Ct. 453, 43 L. Ed. 699), the court or judge should not discharge the prisoner in advance of his trial in the state court; and even after the final determination of the case in the state courts should generally leave him to his remedy by writ of error from the Supreme Court of the United States.

As the primary question here is whether the petitioners are amenable to the state court upon the indictment found therein, it is proper to quote at length one of the articles for the government of the armies of the United States prescribed by section 1342 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 955], viz.:

"Art. 59. When any officer or soldier is accused of a capital crime, or of any offense against the person or property of any citizen of any of the United States, which is punishable by the laws of the land, the commanding officer, and the officers of the regiment, troop, battery, company, or detachment, to which the person so accused belongs, are required, except in time of war, upon application duly made by or in behalf of the party injured, to use their utmost endeavors to deliver him over to the civil magistrate, and to aid the officers of justice in apprehending and securing him in order to bring him to trial. If, upon such application, any officer refuses or willfully neglects, except in time of war, to deliver over such accused person to the civil magistrates, or to aid the officers of justice in apprehending him, he shall be dismissed from the service."

This enactment is a distinct recognition by Congress of the general jurisdiction in time of peace of the civil courts of a state over persons in the military service of the United States who are accused of a capital crime, or of any offense against the person of a citizen committed within such state. Such criminal jurisdiction has always been exercised by the state courts. Coleman v. Tennessee, 97 U. S. 509, 514, 24 L. Ed. 1118. Clearly, the indictment against the petitioners presents a case prima facie cognizable by the state court. Does the evidence disclose any ground to defeat that jurisdiction, or show a case requiring interference by this court to prevent the trial of the petitioners upon the indictment? I feel constrained to answer negatively. The shooting of Crowley did not take place upon the land purchased by the United States for military purposes by consent of the Legislature of the commonwealth of Pennsylvania, but outside the arsenal property. It occurred within the territorial jurisdiction of the state court in which the indictment is pending—the only civil court which could have jurisdiction to try the petitioners for the alleged unlawful killing of Crowley. The shooting was not done in obedience to a command to fire given to Drury and Dowd by their superior officer. It will be remembered that the shooting which Dowd did and Drury is alleged to have directed was, according to the testimony for the commonwealth, of a man who had ceased flight and offered to surrender. It may be conceded that it was the right and duty of the petitioners to pursue and arrest Crowley, who was suspected (justly, it now seems) of being concerned in the larceny of some pieces of copper taken off one of the arsenal buildings, but it

by no means follows that the homicide, as testified to by the witnesses for the commonwealth, is not rightfully the subject of judicial investigation in the orderly course of procedure by the civil courts having jurisdiction of such offenses as are charged in this indictment. Crowley, moreover, was a citizen of Pennsylvania. He was not in military service, nor subject to military law. The case is wholly unlike the cases of United States v. Clark (C. C.) 31 Fed. 710, and In re Fair (C. C.) 100 Fed. 149. In the former of these cases the shooting occurred within a military reservation of the United States, and was of a military convict (a soldier) by a military guard to prevent the escape of the convict. In the other case (In re Fair) the person shot was a military prisoner held in a fort of the United States under a charge of desertion, who, with violence, had overcome his military guard, and was immediately pursued beyond the fort by soldiers on guard duty, who fired to prevent his escape. Moreover, in each of those cases, and, indeed, in every case brought to my attention wherein a United States court or judge upon habeas corpus has discharged a prisoner in custody under state authority, the facts entitling the prisoner to exemption from state control were undisputed. This was so in the cases In re Neagle, supra; In re Waite, supra; In re Lewis (D. C.) 83 Fed. 159; United States v. Fuellhart (C. C.) 106 Fed. 911; In re Turner (D. C.) 119 Fed. 231; and Ohio v. Thomas, supra. But in the present case there is a serious conflict of evidence involving an important issue of fact, namely, whether Crowley was shot while fleeing to escape arrest, or after he had stopped and turned around, and virtually had surrendered. It is very clear that on a habeas corpus hearing such as this it is not competent for the court to determine upon conflicting evidence whether the person under indictment in the state court is guilty or innocent of the offense of which he is accused. Ex parte Crouch, 112 U. S. 178, 180, 5 Sup. Ct. 96, 28 L. Ed. 690. Whether the shooting of Crowley was justifiable or excusable must be determined by the state court to whose jurisdiction the petitioners are subjected. That the petitioners will be protected by that court in all their legal rights is not to be doubted.

An order will be made discharging the writ of habeas corpus, and remanding the petitioners to the custody of the warden of the jail of Allegheny county.