## COMMONWEALTH

### *v.*

## ANDREWS, ORDWAY AND GREEN.

(*Supreme Court of Appeals of Virginia, February, 1877.*)

[Virginia Law Journal, 1877, p. 92.]

**Buildings Erected by U. S. Government on Private Property—Assessment of—Case at Bar.**

Buildings were erected by the United States on land owned by A., O. and G., with the permission and with the understanding that the buildings were removable at the pleasure of the U. S. The buildings were used by the U. S. for the purpose of preparing granite to be employed in the erection of public buildings at Washington, D. C. The assessor charged the buildings, along with the land, to A., O. and G. Upon their application, under ch. 33, § 87, Code of 1873, for redress against the assessment, it was *held* :

**Same—Same.**

1. That the buildings remained personal chattels, and the property of the U. S.

**Same—Same—Exempt from Taxation by State.**

2. That they are a means employed by the federal government for carrying into effect powers granted under the constitution, and, as such, are exempt from state taxation, and were therefore improperly assessed to A., O. and G.

The facts certified were the following :

Andrews, Ordway and Green own a tract of land in Chesterfield county. The land and buildings thereon were assessed on the land book for 1873 at $29,650, and the whole thereof charged to Andrews, Ordway and Green. The sum included

in said assessment on account of buildings was $27,500 ; of the said buildings only one-sixth in value belongs to Andrews, Ordway and Green ; the rest of the buildings, amounting in value to five-sixths of the whole, were erected by the U. S., with the consent of Andrews, Ordway and Green, and with the understanding that the said buildings were removable by the U. S.   The said buildings were paid for entirely by the U. S., and are the property of the U. S. ; they are used by the operatives and employees of the U. S. in dressing the granite to be used in the erection of certain public buildings in Washington, D. C., for the use and accommodation of the State, Navy and War Departments of the U. S. government. Andrews, Ordway and Green paid the taxes assessed against them ; and for the recovery of the portion assessed on the buildings owned by the U. S., and to have the said buildings stricken from the assessment, they applied to the county court under ch. 33, § 87, et seq., of the Code of 1873.   The relief asked was refused by the county court, but on appeal to the circuit court, it was granted.   Andrews, Ordway and Green thereupon applied to the auditor of public accounts to refund the taxes improperly assessed against, and paid by, them ; and upon his refusal to do so, they applied to the court of appeals for a mandamus to compel him to issue his warrant in their favor, pursuant to ch. 33, § 90. Pending this proceeding by mandamus, the commonwealth sued out a writ of error to the judgment of the circuit court reversing that of the county court, and thereupon the two cases were heard together.

*The Attorney General*, for the commonwealth.

*McRae* and *Christian*, contra.

CHRISTIAN, J., delivered the opinion of the court.

While the amount involved in this case is insignificant,

the question we have to determine is of the gravest importance, because it involves the respective rights and powers of the state, and the federal government, with respect to the highest prerogative of sovereignty, the power of taxation.

First, I have to remark, that it must be taken upon the certificate of facts in the record as a *concessum* in the case that five-sixths of the buildings erected on the lands of Andrews, Ordway and Green were the property of the United States, erected by that government for a legitimate purpose, and under a contract to be removed at the pleasure of the government. Under that contract, they (the buildings) were not the property of the owners of the soil, and were no part of the real estate.

It is a principle firmly settled by numerous decisions, that where a building is erected by one man, upon the land of another, by his permission, upon an agreement or understanding that it may be removed at the pleasure of the builder, it does not become a part of the real estate, but continues to be a personal chattel and the property of the person who erected it. 1 Wash. on Real Prop. p. 3, § 4 ; Osgood v. Howard, 6 Green. 452 ; Smith v. Benson, 1 Hill 176 ; Wells v. Banister, 4 Mass. 514; Doty v. Gorham, 5 Pick. 489 ; Marcy v. Darling, 8 Pick. 283 ; Rogers v. Woodbury, 15 Pick. 146 ; Wall v. Hinds, 4 Gray 273 ; Barnes v. Barnes, 6 Vt. 388; Dubois v. Kelly, 10 Barb. 496 ; and Dame v. Dame, 38 N. H. 429, and cases there cited where the whole subject is elaborately discussed, and numerous decisions of many states in the union are collated.

From these decisions it is clear that the mere fact that these buildings were erected upon the land of the defendants in error by their permission did not constitute them a part of the realty, but they were the personal property of the

United States government to be removed at its pleasure under its contract with the defendants in error.

Being then the property of the United States, is it liable to be taxed by the state? This is the question we have to determine. It has been argued here on both sides with signal ability and learning. In my view of the case, however, much of the learned and eloquent argument of the attorney general was directed to a question that does not arise in this case. He treated the property taxed as real estate, and protested against the right of the United States to acquire or control in any manner any real property within the jurisdiction of the state, except in the mode pointed out in the constitution. Undoubtedly, the jurisdiction of the state is supreme over every inch of her territory, except that which is voluntarily relinquished to another sovereignty. Beyond all question the right of eminent domain is in the state and not in the United States. The United States can acquire ownership of the soil within the territory of the state only with the consent of the state.

But in this case the property taxed is not land, but personal property, and questions as to eminent domain and exclusive jurisdiction need not be considered. The simple question is, whether this personal property acquired by the United States for the purposes set forth in the certificate of facts, is a proper subject of taxation by the state. It is certified as part of the facts proved in the court below, that "the said buildings were paid for entirely by the United States, and are the property of the United States, and are used by the operatives and employees of the United States in dressing granite to be used in the erection of certain public buildings in Washington for the use and accommodation of the State, War and Navy Departments of the United States government." Can such property, used for such purposes, be a legitimate subject of state taxation?

Taxation is an incident of sovereignty, and is co-extensive with that to which it is an incident.  All subjects over which the sovereign power of the state extends are objects of taxation, but over those which it does not extend are upon the soundest principles exempt from taxation.  This proposition may almost be pronounced self-evident.

In our complex system of government, the power of taxation is concurrent in the state and federal governments. These two governments operate on the same people and over the same territory.  The power of sovereignty are divided between the government of the Union and those of the states ; and although both exist within the same territorial limits, they are separate and distinct sovereignties, acting separately and independently of each other, within their respective spheres.  Each within its appropriate sphere is supreme. They are each sovereign with respect to the objects committed to it, but neither sovereign with respect to the objects committed to the other.  It is true, the government of the United States is one of the limited and carefully guarded powers.  It must be now taken as an established rule of construction of the constitution of the United States, that the sovereign powers vested in the state governments by their respective constitutions remain unaltered and unimpaired except so far as they were granted to the government of the United States.  That the intention of the framers of the constitution in this respect might not be misunderstood, this rule of interpretation is expressly declared in the 10th art. of the Amendments : "The powers not delegated to the United States are reserved to the states respectively or to the people."

The government of the United States, therefore, can claim no powers which are not granted to it by the constitution, and the powers actually granted must be such as are expressly given, or given by necessary implication.  But

while a government of limited powers, yet, within the sphere of its granted powers and in the exercise of all those means, and the employment of all those agencies and instrumentalities "necessary and proper for carrying into execution" its granted powers, the government of the United States is as supreme and independent as the states which created it.

McCulloch v. Maryland, 4 Wheat. 327 ; Osborne v. U. S. Bank, 9 Wheat. 738 ; Weston v. City of Charleston, 2 Pet. 449 ; Bank of Commerce v. N. Y. City, 2 Black. 620 ; Bank Tax Cases, 2 Wall. 200 ; Kent. Com. 425, 431 (Marg ).

Let us now apply these principles to the case before us. The property proposed to be taxed is owned by the United States government and used by that government in preparing granite for the erection of a grand public building in the city of Washington, for the accommodation of the Navy, War and State Departments. The property thus owned and used is not the property of a contractor of that government, but of the government itself, and is used by its employees and agents. Now the power to "erect needful public buildings" is one of the powers expressly granted in the constitution. And even if it had not been expressly granted, it would have been conferred, by necessary implication ; for the very establishment of the government carried with it the necessity of the power to erect public buildings in which to carry on its great and varied affairs in its different departments.

The power to "erect needful buildings" necessarily carries with it the power to use the proper means to erect such buildings. This cannot be done without materials, without tools, without machinery, without enginery, often expensive and elaborate. Buildings cannot be spoken into existence or raised by magic.

Property in varied forms must be employed in providing material, in dressing it into shape and form, in transporting

it and placing it in its appropriate place.    And all this must
be done often, and generally within the territorial limits of
the states.

Suppose the necessary materials cannot be obtained within
the ten square miles comprising the District of Columbia, or
from any other real estate over which the United States holds
exclusive jurisdiction and ownership, what then ?    May not
the government acquire by purchase the necessary materials
in one of the states ?    And if so acquired, must it not have
the right without hinderance or restriction to prepare those
materials by the use of all the machinery and all the appli-
ances necessary to that end ?    If temporary buildings are
necessary, may it not put up such buildings under contract
with the owner of the soil ?

If engines and machinery and teams and wagons and other
appliances and property are necessary, can this property be
taxed when used for this legitimate purpose ?    I think not.
The power to tax carries with it the power to destroy.    If
the right to impose the tax exists at all, it is a right which,
in its nature, acknowledges no limits.    It may be carried to
any extent within the jurisdiction of the state or corporation
which imposes it, which the mere will of such state or cor-
poration may prescribe.    The consequence would be, that
the state might deprive the general government of the ex-
ercise of power essential to its very existence.

Can anything be more dangerous or more injurious than
the admission of a principle which authorizes every state
and every corporation in the Union which possesses the
right of taxation, to burthen, at their discretion, the exercise
of the granted powers of the general government, or those
which are necessary and proper to carry such granted
powers into execution ?    Within this domain the supremacy
of that government cannot be questioned.    And in the ex-
ercise of its legitimate powers, it must be left free and un-

embarrassed by any conflicting authority.    The powers of a
state cannot rightfully be so exercised as to impede or ob-
struct the free course of those measures which the govern-
ment of the states united may rightfully adopt.

In McCulloch v. The State of Maryland (*supra*) this question
was discussed in all its relations by the most distinguished
counsel of that day of great men ; Daniel Webster, William
Pinkney, William Wirt, Luther Martin, and Walter Jones,
being among the counsel who argued the case.    Chief Justice
Marshall delivered the opinion of the court.    That opinion
stands to-day, as it will stand for all time, as a . monument
to his wisdom and learning, and among the great emanations
of that luminous intellect which made clear and certain every
question it took in its grasp.    The principles established by
that opinion have been recognized and followed ever since.
I give his own interpretation of that opinion—given ten years
afterwards—to show its application to the case before us.
In Weston v. The City Counsel of Charleston, 2 Pet. 467,
he says—referring to the case of McCulloch v. State of
Maryland: "It was discussed at the bar in all its relations,
and examined by the court with its utmost attention.    We
will not repeat the reasoning that conducted us to the con-
clusion then formed ; but that conclusion was, that all sub-
jects over which the sovereign power of the state extends,
are objects of taxation ; but those over which it does not
extend, are, upon the soundest principles, exempt from tax-
ation.    The sovereignty of a state extends to everything
which exists by its own authority, or is introduced by its per-
mission, but not to those means which are employed to carry
into execution powers conferred by the people of the United
States.    The attempt to use the power of taxation on the
means employed by the government of the Union, in pur-
suance of the constitution, is itself an abuse, because it is the
usurpation of a power which the people of a single state cannot
give.    The states have no power by taxation or otherwise,

to retard, impede, burthen, or in any manner control the operation of constitutional laws to carry into execution the powers vested in the general government."

The case before us seems to me to come within the letter and spirit of the principles here announced.

Property is certainly one of the means, or agencies, or instrumentalities, or whatever you may call it, "necessary to carry into execution" the powers expressly granted in the constitution to erect "all needful buildings." The government of the United States must, of necessity, hold property within the state, as the means of exercising its high and important functions. And if this property can be taxed by the state, it may be taxed out of existence, and thus the general government may be "retarded, impeded, and burthened" in its operations to such an extent, that its most important functions may be impaired, and its very existence threatened.

I have already said that the principles settled in McCulloch v. State of Maryland have never been departed from, but acted upon by the supreme court of the United States for more than half a century—from 1819 down to the present day. In several recent decisions the same doctrines have been reaffirmed. See Bank of Commerce v. New York City, 2 Black. 620 ; Bank Tax Cases, 2 Wall. 200.

The establishment and enforcement of the principles declared by Chief Justice Marshall in the cases above referred to, are absolutely necessary to the harmonious and efficient operations of both the national and state governments. They apply to both and must govern both with equal force. If the state governments may tax the property, the means, the appliances, the agencies and instrumentalities used by the federal government in carrying on its manifold and varied operations within that sphere in which it is supreme, why may not the national government tax the property, the agencies and instrumentalities used by the state government

in carrying on its operations within that sphere in which it is supreme?

If such usurpation of authority can be exercised by one, why may it not be exercised by the other? In both it would be an usurpation and abuse of authority.

In The Collector v. Day, 11 Wal. 127, Mr. Justice Nelson, in delivering the opinion of the court, uses the following forcible and apt words, which very fitly apply to the point we are now considering. It was a case where a United States collector sought to impose a tax upon the salary of a judicial officer of a state. In discussing the question as to the power of the federal government to enforce such a tax, he says: "And if the means and instrumentalities employed by that government (the United States government) to carry into operation the powers granted to it are necessarily exempt from taxation by the states, why are not those of the state depending upon their reserved powers, for like reasons equally exempt from federal taxation? Their unimpaired existence in the one case is as essential as in the other. It is admitted that there is no express provisions in the constitution that prohibits the general government from taxing the means and instrumentalities of the states; nor is there any prohibiting the states from taxing the means and instrumentalities of that government. In both cases the exemption rests upon necessary implication, and is upheld by the great law of self-preservation; as any government whose means employed in conducting its operations, if subject to the control of another and distinct government, can exist only at the mercy of that government. Of what avail are these means, if another power may tax them at discretion?" See, also, Dobbins v. Commissioners of Erie, 16 Pet. 435.

I think the true principle sustained by the highest authority, by the constitution itself, and by its most eminent expounders, is that heretofore declared, to wit: that each

government is, within appropriate sphere, supreme.  Each is sovereign with respect to the objects committed to it. Neither is sovereign with respect to the objects committed to the other.

If this cardinal principle of the constitution be constantly kept in view and steadily upheld, the two governments, state and federal, will move, each in its own orbit of governmental operations, without collision and without conflict of authority.  Each being separate and independent ; neither interfering with the other, within the domain of its exclusive sovereignty ; the operations of each left free and unembarrassed from restrictions imposed by the other ; the whole complex system will move in harmony and peaceful conjunction, dispensing to all the blessings of free government and constitutional liberty.

STAPLES and BURKS, JJ., concurred.  MONCURE, P., and ANDERSON, J., dissented.

Judgment affirmed.

<hr/>

NOTE.

The right of the federal government to acquire and hold land for its public uses in the state, without the consent of the state, was not necessary to be decided in the case before the court; but the opinion of all the judges upon that vexed question seems to have been adverse to the existence of such right.  In the case of Kohl *v.* U. S., 1 Otto 367, the Supreme Court of the United States reached an opposite conclusion.  In that case it was decided that the United States might, for its public uses, condemn land in a state, without the consent of the latter, by a proceeding *in invitum* against the owner, making to such owner due compensation. —Ed.