## STATE *vs.* WILLIAM BURTON.

### JUNE 19, 1918.

PRESENT:   Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)   Conflict of laws.   Military Exigency.   Speed Laws.*

A dispatch driver in the naval service of the United States, while acting under the specific instruction of his superior officer to proceed in a motor vehicle with all possible dispatch along one of the highways of the State, which instruction the dispatch driver was obliged to obey and which was assumed by his superior officer to necessitate the violation of the speed laws of the State, and which was given in a matter deemed to be of urgency and appertaining to the conduct of the war between the United States and a foreign nation, is not amenable to the statutes of the State regulating the speed of motor vehicles on public highways.

*(2)   Conflict of Laws; Military Exigency; Speed Laws.*

The rules established by the legislature regulating the use of the highways of the State are subordinate to the exigencies of military operations by the Federal Government in time of war.

CRIMINAL COMPLAINT, certified by Superior Court on question of law.

SWEETLAND, J. This case is a criminal complaint charging the respondent with operating a motor vehicle on Thames street, a public highway in the city of Newport, at an unreasonable rate of speed.

The respondent is a machinist mate, second class, regularly enlisted in the United States Naval Reserve Force, and said alleged violation of law occurred while the respondent was on duty as a dispatch driver. The case is before us upon the certification by the Superior Court of a question of law raised by the Attorney General. The question certified is as follows:

"1. Is a machinist mate, second class, regularly enlisted in the United States Naval Reserve Force, while on duty as a dispatch driver, and acting under the specific instructions of his superior officer to proceed with all possible dispatch and assumed by the officer to necessitate the violation of the speed laws, and which instructions he was obliged to obey, in a matter by said officer deemed to be of urgency and in a matter appertaining to the conduct of the war between the United States and Germany, amenable to the laws of the State of Rhode Island for violating the speed laws under the provisions of Chapter 298, Section 5 of the General Laws?"

The question is inexact and appears to us somewhat lacking in clearness. No person is amenable to the laws of the State for violating the speed laws under the provisions of Chapter 298, Section 5 of the General Laws, as said section is entirely without reference to the regulation of speed upon the highway. The provision of law which is probably referred to is that contained in Chapter 1354, Section 17, Public Laws, approved March 30, 1916, regulating the operation of motor vehicles. From the language of the charge it is apparent that the complainant intended to set out in said complaint a violation of the provisions of the last named section. From the argument of counsel before us we assume that the question intended to be propounded to us might be formulated as follows: Is a man of the United States Naval Reserve Force on duty as a dispatch driver

amenable to the provisions of Chapter 1354, Section 17 of the Public Laws, while acting under the specific instructions of his superior officer to proceed in a motor vehicle with all possible dispatch along one of the highways of the State which instruction said man was obliged to obey, which instruction was assumed by said officer to necessitate the violation by said man of the speed laws of the State, and which instruction was given by said officer in a matter deemed by him to be of urgency and appertaining to the conduct of the war between the United States and Germany? In essence this question is: Are the rules established by the General Assembly regulating the use of the highways of the State subordinate to the exigencies of military operations (2) by the Federal government in time of war? In our opinion they are. Under the Constitution of the United States the conduct of the war now existing between this country and Germany vests wholly in the Federal government. Any state law the operation of which will hinder that government in carrying out such constitutional power is, during the exercise of the power, suspended as regards the national government and its officers, who are charged with the duty of prosecuting the war. The principle is well established that in respect to the powers and duties exclusively conferred and imposed upon the Federal government by the Constitution of the United States the several states have subordinated their sovereignty to that of the nation. *Ex Parte Siebold*, 100 U. S. at 371; *Tennessee v. Davis*, 100 U. S. 257; *In re Neagle*, 135 U. S. 1; *In re Waite*, 81 Fed. 359; *In re Fair*, 100 Fed. 149. It is not questioned that in time of war within the territory occupied by the Army or the Navy, and in the districts affected by military operations a military commander is supreme; he may override civil authority and pursue whatever course the necessities of the situation commend to his judgment. Newport is not within the theatre of actual conflict. It is, however, the headquarters of the Second Naval District. The waters about it are in the actual control of the naval forces of the United States,

which are charged with the duty of guarding our coasts and waterways against surprises and attacks by an active and resourceful enemy. Any plan of the naval authorities for the furtherance of that purpose cannot be hampered by the enforcement of the ordinary regulations pertaining to the use of our highways.

The respondent is a sailor in the service of the United States, and was bound to obey the lawful orders of his superior officer. The order in question, although it called for a disregard of the ordinary rules of conduct, was not illegal in the circumstances, but on its face was one which was justified by the rules of war and the situation then existing at Newport. It should protect the respondent.

In the argument before us it was suggested that the prosecution of this complaint was in some measure forced upon the police authorities of Newport in an effort to restrain the inconsiderate use of motor vehicles in the congested streets of that city by a few men in the military and naval service, who have appeared to consider that their connection with that service relieved them from an observance of the ordinary highway and traffic regulation of the State and city. If such condition exists this opinion should in no degree foster such false and un-American notion. Such an attitude is undoubtedly contrary to the spirit of the general orders and regulations of the United States Army and Navy. The principle which we have enunciated in this opinion is without application to cases which show a failure to comply with our laws and ordinances when no military necessity exists. In the case *In re Waite*, 81 Fed. 359, the court, after stating the proposition that in matters within the sole control of the government of the United States its officers carrying forward such matters should not be interfered with by criminal proceedings instituted in the State court, said: "By this it is not meant to assert that because a person is an officer or agent of the federal government he is thereby excepted out from the jursidiction of the state or the binding force of its laws. The mere fact that when the acts by him

done were done he was an officer of the United States, charged with certain duties to that government, will not afford him immunity from prosecution under the laws of the state, nor will the mere fact that he claims that the acts done were within the line of his official duty afford him protection, if the acts are such as to show that the claimed immunity is a mere subterfuge, and that under no fair consideration of his official duty could he have assumed that he was acting in his official capacity when the acts complained of were done by him."

The question certified, as we have interpreted its intent and as we have reframed it, in our opinion should be answered in the negative and we so decide.

The papers in the case with this decision certified thereon are sent back to the Superior Court for further proceedings.

*Fred A. Otis, Third Assistant Attorney General,* for State.
*Sheffield & Harvey,* for defendant.