## Richmond

## HALL v. COMMONWEALTH.

January 20, 1921.

1. CONSTITUTIONAL LAW.—*Postal Laws—Automobiles—Violation of State Speed Regulation by United States Mail Truck Driver.*— The provisions of the State automobile law (Acts of 1916, p. 940), fixing the speed limit for automobiles· on public highways, must be obeyed by a United States employee while engaged in transporting United States mail in a United States owned automobile pursuant to the direction of the Postmaster General, where it does not appear that such direction of the Postmaster General fixed a schedule for the carrying or delivery of the mail, which required the employee to violate the pro-· ·visions of the State statute.

2. CONSTITUTIONAL LAW.—*Postal Laws—Automobiles—Violation of State Speed Regulation by United States Mail Truck Driver— Case at Bar.*—In the instant case the mail carrier was prosecuted for exceeding the speed limit while passing through Leesburg, *en route* from Washington to Winchester. It was shown that he reached Winchester seventeen minutes late on the trip on which he exceeded the speed limit. The record did not show the schedule time for leaving Washington, or for the arrival or the time of his actual arrival at the Leesburg post office, or the distance from Washington to the Leesburg post office, or from the Leesburg post office to the Winchester post office. The record, therefore, did not show that the speed limit provisions of the State statute were in conflict with the direction of the Postmaster General to the mail carrier, or that they at all interfered with the performance by the accused of his duties as an employee of the Federal government.

*Held:* That the State statute was a valid exercise of the police power of the State in so far as its speed limit provisions were involved in the instant case, and should have been obeyed by the accused.

Error to a judgment of the Circuit Court of Loudoun county.

*Affirmed.*

The warrant in this case, issued by the mayor of Lees-burg, charged that the accused, the plaintiff in error, "on the 29th day of January, 1919, within the jurisdiction of said town, did unlawfully drive and operate a government owned automobile truck carrying United States mail upon and along a public street of said town at a rate of speed exceeding fifteen miles per hour, contrary to the statutes of the Commonwealth of Virginia in such case made and provided."

The accused was tried, found guilty by the mayor, and fined $10.00 and costs. An appeal was taken from such decision to the circuit court. In such court there was a demurrer to the warrant, which was overruled, proper exception taken by the accused, followed by a trial by jury, which resulted in the following verdict: "We, the jury, find the accused, L. H. Hall, guilty as charged in the within warrant and fix his punishment by a fine of $15.00." Thereupon the accused, by counsel, moved the court to set aside the verdict as contrary to the law and the evidence and as not supported by the evidence, which motion the court overruled and entered judgment against the accused in accordance with the verdict for the fine of $15.00 and costs. To which action of the court the accused duly excepted, and assigns before us the action of the trail court as error.

The facts proved on the trial of the case are certified in the record as follows:

"The defendant was employed by the Postmaster General; his duties consisted in operating a government-owned motor truck in transporting the United States mail over a route designated by the Postmaster General, extending from Washington, D. C., to Winchester, Virginia, via Leesburg, Virginia; he operated under a time schedule fixed by the Postmaster General; his schedule required him to reach Winchester, Virginia, by 11:43 A. M.; on the trip made

the basis of the warrant in this case he arrived in Winchester, Virginia, seventeen minutes late; as charged in said warrant he was running and operating said motor truck at a rate of speed in excess of fifteen miles per hour."

The petition for the writ of error in this case sets out the question presented for our decision and the statutes, State and Federal, claimed to be pertinent, which so far as material are as follows:

## "*Question Presented.*

"The question arising on the record for determination is whether the provisions of the State automobile law here drawn in issue must be observed by a United States employee while engaged in transporting United States mail in a United States owned automobile pursuant to the direction of the Postmaster General.

## "*Pertinent Statutes.*

"A. State Statutes.—Section 1 of the Virginia act of March 24, 1916, (Acts of Assembly 1916, p. 940), reads as follows:

" 'That it shall be unlawful for any person, or persons, except in accordance with the provisions of this act, to run, drive, or operate any automobile, locomobile, motorcycle, motor bicycle, or any vehicle of any kind, the motive power of which shall be electricity, steam, gas, gasoline, or any other motive power except animal power, and which said vehicles shall hereafter be called machines in this act, on or along, or across, any public road, street, alley, highway avenue or turnpike of any county, city, town or village in the State of Virginia, except and until such person shall comply with the provisions of this act.'

"Section 8 of the same act reads as follows:

" 'The operator of a machine shall not drive in the corporate limits of any city or town at a greater speed than fifteen miles an hour, except in cases where the local ordinances of such city or town shall provide otherwise. Outside of the corporate limits of any city or town, a speed of twenty miles an hour is permissible, except going around curves, down sharp declines, or at the intersection of any cross-roads, or over the crest of hills, or in passing other vehicles or riders, on roadways, when a rate of speed not exceeding ten miles an hour must be observed.'

"Section 14 of the same act, as amended by the act of March 15, 1918, (Acts of Assembly 1918, p. 410), reads as follows:

" 'Any person failing to perform any duty imposed by any section of this act, or violating any provision or condition herein set forth, shall for each offense, be fined not less than two dollars and fifty cents, or imprisoned in jail not less than five nor more than thirty days, or both, in the discretion of the justice of the peace before whom the case may be tried.'

"B. Federal Statutes.—Section 161 of the Revised Statutes of the United States [U. S. Comp. St. §235] reads as follows:

" 'The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it.'

"Section 396, R. S. [U. S. Comp St. § 582] reads as follows:

" 'It shall be the duty of the Postmaster General:

" 'First. To establish and discontinue post offices.

" 'Second. To instruct all persons in the postal service with reference to their duties.

\*      .\*      \*      \*      \*      \*      \* .      .\*      \*      \*

" 'Ninth. To superintend generally the business of the department, and execute all laws relative to the postal service.'

"Section 3964, R. S. [U. S. Comp. St. § 7456] reads as follows:

" 'The following are established post roads:

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

" 'All letter-carrier routes established in any city or town for the collection and delivery of mail matters.'

"The act of March 1, 1884 (23 Stat. 3 [U. S. Comp. St. § 7457], reads as follows:

" 'That all public roads and highways while kept up and maintained as such are hereby declared to be post routes.'

"Section 3965, R. S. [U. S. Comp. St. § 7458] provides as follows:

" 'The Postmaster General shall provide for carrying the mail on all post roads established by law, as often as he, having due regard to productiveness and other circumstances, may think proper.'

"Section 3841, R. S. [U. S. Comp. St. § 7201] reads as follows:

" 'The Postmaster General shall furnish to the postmasters at the termination of each route a schedule of the time of arrival and departure of the mail at their offices, respectively, to be posted in a conspicuous place in the office; and he shall also give them notice of any change in the arrival and departure that may be ordered; and he shall cause to be kept and returned to the department, at short and regular intervals, registers, showing the exact times of the arrivals and departures of the mail.'

"Section 3962, R. S. [U. S. Comp. St. § 7450] provides as follows:

" 'The Postmaster General may make deductions from the pay of contractors, for failures to perform service accord-

ing to contract and impose fines upon them for other delinquencies. He may deduct the price of the trip in all cases where the trip is not performed; and not exceeding three times the price if the failure be occasioned by the fault of the contractor or carrier.' "

*Hiram M. Smith, Henry R. Miller, Jr.,* and *Harry S. Ridgeley,* for the plaintiff in error.

*Jno. R. Saunders, Attorney-General, J. D. Hank, Jr., Assistant Attorney-General,* and *Wilbur C. Hall,* for the Commonwealth.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

[1]  1. The question presented by the record in this case for our decision is whether the provisions of the State automobile law fixing the speed limit therein set forth must be obeyed by a United States employee while engaged in transporting United States mail in a United States owned automobile pursuant to the direction of the Postmaster General, which direction, so far as the record discloses, does not fix a schedule for the carrying or delivery of the mail which requires the employee to violate the aforesaid provisions of the State statute?

 [2]  It does not follow from the facts shown in evidence concerning the scheduled time at which the accused was required to reach Winchester and from the fact that he reached that point seventeen minutes late, on the trip on which he exceeded the speed limit of the State statute, while passing through the town of Leesburg, *en route* from Washington via Leesburg to Winchester, that the direction of the Postmaster General required the accused to violate the State statutory speed limits in order to reach Winches-

ter on scheduled time. The record does not show the scheduled time for leaving Washington, or for the arrival or the time of the actual arrival at Leesburg post office, or the distance from Washington to Leesburg post office, or from the latter post office to Winchester post office, along the post routes between those places. That is to say, the record in this case does not show that the speed limit provisions of the State statute are at all in conflict with the aforesaid direction of the Postmaster General, or that they at all interfere with the performance by the accused of his duties as an employee of the Federal government. So far as the record before us discloses, the Federal statutes on the subject and regulations thereunder are in entire accord with the State statute aforesaid, no conflict appearing to exist between them.

Such being the situation, we have no hesitancy in holding that the State statute in question is a valid exercise of the police power of the State in so far as its speed limit provisions are involved in this case, and should have been obeyed by the accused.

The mere fact that the provisions of the State statute in question affect a Federal employee or instrumentality is immaterial. And certainly where the statute does not attempt to control and does not in its operation even incidentally interfere in any way with the performance of duty of the Federal employee, it is valid.

As said in *C. & A. Ry. Co.* v. *City of Carlinville,* 200 Ill. 314, 325, 65 N. E. 730, 733, 60 L. R. A. 391, 395 (93 Am. St. Rep. 190), of an ordinance limiting the speed of trains on an interstate railway carrying United States mail to ten miles an hour within the corporate limits of the municipality: "The ordinance does not undertake to regulate commerce between the States or interfere with the transportation of the mail, and amounts to but a reasonable regulation of the speed of trains within the corporate limits of

the city, and such regulation has been uniformly held valid;" citing a number of decisions of the Supreme Court of the United States.

As held in *Gladson* v. *State of Minnesota*, 166 U. S. 427, 17 Sup. Ct. 627, 41 L. Ed. 1064, an intrastate train "carrying United States mails is not exempt from the operation of a State law requiring all regular passenger trains to stop at all stations at county seats."

In *Commonwealth* v. *Closson*, 229 Mass. 329, 118 N. E. 653, L. R. A. 1918C, 939, cited with approval by the Supreme Court of the United States in the recent case of *Johnson* v. *Maryland*, 254 U. S. 41 Supt. Ct. 16, 65 L. Ed., hereinafter more particularly referred to, the accused was charged with the violation of the traffic rules and regulations of the State. The accused rested his defense, as stated in the opinion of the court, "upon the ground that, being employed as a mail carrier using a vehicle for the delivery of mail, he is immune from prosecution and punishment." The opinion thereupon proceeds as follows:

"The designated streets or ways are not, however, instrumentalities created by the general government, where 'exemption from State control is essential to the independent sovereign authority of the United States within the sphere of their delegated powers.' If they were, the defendant has committed no offense. *Commonwealth* v. *Clary*, 8 Mass. 72; *Newcomb* v. *Rockport*, 183 Mass. 74, 76, 78, 66 N. E. 587. While undoubtedly they are post roads under the act of Congress, March 1, 1884, chap. 9, enacting that 'all public roads and highways, while kept up and maintained as such, are hereby declared to be post routes' ([23 Stat. at L. 3] U. S. Comp. Stat. 1916, sec. 7457), and whoever knowingly and willfully obstructs or retards 'the passage of the mail, or any carriage, * * * the driver, or carrier, * * *' is, upon conviction, subject to fine or imprisonment, or both, by U. S. Rev. Stats., sec. 3995, act of March 4, 1909, chap.

94

321, sec. 201, 35 Stat. at L. 1127, Comp. Stat. 1916, sec.
10371, yet the ways remain public ways laid out and main-
tained by the Commonwealth, which has the exclusive power
not only of alteration and of discontinuance, but to make
and enforce reasonable regulations for their use.   Nor do
the facilities thereby afforded for transportation of the
mails confer extraordinary rights upon mail carriers to
use the ways as they please, or necessarily or impliedly
do away with the power of supervision and control inherent
to the State.   *Commonwealth* v. *Breakwater Co.*, 214 Mass.
10, 100 N. E. 1034; *Postal Teleg. Cable Co.* v. *Chicopee*, 207
Mass. 341, 350, 93 N. E. 927, 32 L. R. A. (N. S.) 997;
*Dickey* v. *Maysville, W., etc., P. L. Turnpike Road Co.*, 7
Dana. 113; *Searight* v. *Stokes*, 3 How. 151, 11 L. Ed. 537;
*Price* v. *Penn. R. Co.*, 113 U. S. 221, 28 L. Ed. 931, 5 Sup.
Ct. Rep. 427; *St. Louis* v. *Western U. Teleg. Co.*, 148 U.
S. 92, 37 L. Ed. 380, 13 Sup. Ct. Rep. 485; *Martin* v. *Pitts-
burg & L. E. R. Co.*, 203 U. S. 284, 51 L. Ed. 184, 27 Sup.
Ct. Rep. 100, 8 Ann. Cas. 87.   The use of the streets by
travelers of every description is not prohibited.   It is only
the mode of operation by drivers of vehicles which is reg-
ulated, and, being reasonable, because well adapted to the
security and protection of all travelers, the rules are con-
stitutional and their violation is punishable as a criminal
offense.   *Commonwealth* v. *Kingsbury*, 199 Mass. 542, 85
N. E. 848, L. R. A. 1915E, 264, 127 Am. St. Rep. 513;
*Commonwealth* v. *Maletsky*, 203 Mass. 241, 89 N. E. 245,
24 L. R. A. (N. S.) 1168; *Commonwealth* v. *Feeney*, 221
Mass. 323, 108 N. E. 1068.   The plea to the jurisdiction and
the exception accordingly must be overruled."

See also the note to last-quoted case L. R. A. 1918C, 940,
*et seq.*

A great number of Supreme Court and State decisions
are cited and relied on for the accused.   Among them are
the following: *McCullough* v. *Maryland*, 4 Wheat, 316, 429,

4 L. Ed. 579; *Hall* v. *DeCuir,* 95 U. S. 485, 499, 24 L. Ed. 547; *Commonwealth* v. *Andrews,* 1 Va. Dec. 190, 197, 200; *Weston* v. *Charleston,* 2 Pet. 449, 465, *et seq.,* 7 L. Ed. 481; *Henderson* v. *Mayor,* 92 U. S. 259, 272, 23 L. Ed. 543; *Ohio* v. *Thomas,* 173 U. S. 276, 283, 19 Sup. Ct. 453, 43 L. Ed. 699; *Tennessee* v. *Davis,* 100 U. S. 257, 25 L. Ed. 648; *Ex parte Siebold,* 100 U. S. 371, 394-5, 25 L. Ed. 717; *In re Loney,* 134 U. S. 372, 10 Sup. Ct. 584, 33 L. Ed. 949; *In re Neagle,* 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55; *Pembina Mining Co.* v. *Pennsylvania,* 125 U. S. 181, 186, 8 Sup. Ct. 737, 31 L. Ed. 650; *In re Waite* (D. C.), 81 Fed. 359; *Flaherty* v. *Hanson,* 215 U. S. 515, 30 Sup. Ct. 179, 54 L. Ed. 307; *Boske* v. *Comingore,* 177 U. S. 459, 468-70, 20 Sup. Ct. 701, 44 L. Ed. 846; *Williams* v. *Talladega,* 226 U. S. 404, 33 Sup. Ct. 116, 57 L. Ed. 275; *Farmers' Bank* v. *Minnesota,* 232 U. S. 516, 526, 34 Sup. Ct. 354, 58 L. Ed. 706; *U. S.* v. *Ansonia Co.,* 218 U. S. 452, 471, 31 Sup. Ct. 49, 54 L. Ed. 1107; *Holmes* v. *Jennison,* 14 Pet. 540, 574-5-7, 614, 10 L. Ed. 579; *In re Lewis* (D. C.), 83 Fed. 159; *In re Lewis* (C. C. A.), 254 Fed. 917, 920-1; *U. S.* v. *Fuellhart* (C. C.), 106 Fed. 911; *U. S.* v. *Lipsett* (D. C.), 156 Fed. 65; *Pundt* v. *Pendleton* (D. C.), 167 Fed. 997; *In re Thomas,* 87 Fed. 453, 31 C. C. A. 80; *Stegall* v. *Thurman* (D. C.), 175 Fed. 813; *In re Wulzen* (D. C.), 235 Fed. 362, Ann. Cas. 1917A, 274; *South Carolina* v. *U. S.* 199 U. S. 437, 455, 26 Sup. Ct. 110, 50 L. Ed. 261, 4 Ann. Cas. 737; *Rhode Island* v. *Burton,* 41 R. I. 303, 103 Atl. 962, L. R. A. 1918F, 559; *Johnson* v. *Maryland,* 254 U. S., 41 Sup. Ct. 16, 65 L. Ed.    Of these authorities, this is said in the brief for the accused: "There is but one determinative factor underlying the conclusions reached in the cases above cited, viz: the 'supremacy' of the Federal government in the particular operation or operations to which the State sought to apply its laws.  No court can undertake to weigh the attempted State control and up-

hold it if the court believes the State control is reasonable. As so well stated in *Farmers' Bank* v. *Minnesota,* 232 U. S. 516, 526, 34 Sup. Ct. 354, 58 L. Ed. 706, quoting from *McCulloch* v. *Maryland,* 4 Wheat. 316, 4 L. Ed. 579, in speaking of the right of a State to tax a Federal contract, to any extent, however inconsiderable, it is a burden on the operations of government. It may be carried to an extent which shall arrest them entirely.' In other words, where, as in the case at bar, it appears that the State law is attempted to be applied directly to the Federal operation, it becomes the duty of the court to enforce the 'supremacy' of the Federal government." But without entering upon the consideration of the question of whether any and every conflict whatsoever between State statutes enacted in the exercise of the police power reserved to the States will render such statutes invalid as in conflict with Federal statutes on the same subject, it is manifest that the authorities cited and relied on by the accused certainly have no application where, as in the instant case, the State statute is not in conflict with the Federal statutes involved and do not, so far as the record discloses, interfere at all with the particular Federal operation in question. This will more distinctly appear from a consideration of the two cases last above cited, which are especially relied on for the accused.

In the case of *Rhode Island* v. *Burton,* it appears from the question certified by the trial court for decision by the appellate court, that the specific instruction to the Federal officer, from his superior officer, was "to proceed with all possible dispatch, and assumed by the officer to necessitate the violation of the speed laws (of the State), and which instructions he was obliged to obey in a matter claimed by said officer to be of urgency and in a matter appertaining to the conduct of the war between the United States and Germany." Here was a conflict between State and Fed-

eral laws and a conflict of duty of action in obedience to those laws. Such is not the case presented by the record before us.

In the case of *Johnson* v. *Maryland,* the accused was convicted and fined for driving a government motor truck in the transportation of mails over a post road in Maryland without having passed the examination and paid the fee for and obtained the license to operate the motor truck as required by the State statute. The Supreme Court held in that case, it is true (Mr. Justice Pitney and Mr. Justice McReynolds dissenting), that the provisions of the State statute making such requirements are invalid; but it so held on the ground that such State statute required the "instruments of the United States   *   *   *   to desist from performance (of their duties) until they satisfy a State officer upon examination that they are competent for a necessary part of them, and pay a fee for permission to go on." The court says: "Such requirement does not merely touch the government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the government has pronounced sufficient." Here again was an actual conflict between State and Federal laws and of duty of action in obedience to those laws, which is not presented by the case before us.

As said in the course of the opinion of the Supreme Court in the case last cited: "Of course, an employee of the United States does not secure a general immunity from State law while acting in the course of his employment. That was decided long ago in *United States* v. *Hart,* Pet. C. C. 390, Fed. Cas. No. 15, 316, 5 Op. Attys. Gen. 554. It very well may be that when the United States has not spoken, the subjection to local law would extend to general rules that might affect incidentally the mode of carrying out the employment—as, for instance, a statute or ordinance

regulating the mode of turning the corner of streets. *Commonwealth* v. *Closson,* 229 Mass. 329, 118 N. E. 653, L. R. A. 1918C, 939."

So far as appears from the record of the case before us, "the United States has not spoken" on the subject of the speed at which it was the duty of the accused to travel in such way as to make the provisions of the Virginia statute in question in any way interfere with the performance of the Federal duties of the accused.

The case will, therefore, be affirmed.

*Affirmed.*