**VOGLER v. GREIMANN et al.**

No. 5836.

District Court for the Territory of Alaska, Fourth Judicial Division.

June 30, 1948.

---

[8] Court-Martial Record, Trial testimony page 23.

Warren A. Taylor, of Fairbanks, Alaska, for plaintiff.

Maurice T. Johnson, of Fairbanks, Alaska, for defendants.

PRATT, District Judge.

The Federal Government built, and thereafter maintained a suspension bridge about 400 feet long, wholly within the limits of the municipality of Fairbanks, Alaska. It runs in a northerly and southerly direction over the navigable Chena River. Wooden rails approximately 6 x 6 inches in width form two lanes across the bridge. A center line of these rails is bolted to the center part of the bridge, and another line of rails is bolted on each side of the bridge against the steel trestle-work. The minimum width of each of these lanes is 8 feet 1½ inches, and the average width is 8 feet 2½ inches.

As used hereinafter the word "bridge" includes the approaches, and the word "highway" includes bridges and approaches on such highway.

The defendants have twenty busses which they operate in Fairbanks and near-by vicinity. The bodies of all of these busses are exactly eight feet wide. On the 17 larger busses the outside edge of the tires is flush with the outside edge of the body of the bus. On three of the busses the distance from outside of tire to outside of tire is seven feet two inches. All of these busses are frequently crossing the said bridge, transporting passengers, including school children.

The evidence clearly shows that when the large busses travel in the lanes laid out by the wooden rails, the sides of the tires are rubbed and torn by the rails and bolts, so that the life of a tire is decreased about fifty percent. Also, the doors of these busses, when on the bridge, cannot be opened more than 7 inches, thus creating some danger to passengers in case it should be necessary to unload quickly. To drive the large busses within the lanes also creates the hazard of the bus being struck by on-coming busses, automobiles, trucks and vehicles which are also wide. Busses driven within the lanes have at times crashed against the sides of the bridge, or the railings.

The smaller busses, being ten inches less in width between the outsides of the tires, are less difficult to maneuver within the lanes, but are subject to the same danger as the larger busses of being struck by vehicles in the other lane. In fact, the smaller busses, being eight feet wide and having ten inches less of spread between the outsides of the tires, are more subject to being struck by vehicles in the other lane for the following reasons, to-wit: With five inches on each side of the tire for maneuvering, there is the tendency of the bus driver to pull his vehicle to the left, giving the right side of his bus as much clearance as possible from the bridge trestle-work and rail, which constitutes a menace in case the bus should strike a rock or other obstacle, or should lean over against the bridge by reason of striking the guard rail. In giving the clearance on the right, the body of the bus is thus projected over the center rail and into the other lane.

The body of the average vehicle projects several inches beyond the outside wall of the tires, making it possible for such body to project into the adjoining lane, although the tires are restricted by the center rail. The defendants have had the experience of their busses being struck by vehicles in the adjoining lane, and the glass windows of the bus being broken and thrown among the passengers.

As the eight foot wide lane gives the ordinary passenger car, which is approximately 5½ feet wide, fifteen inches on each

side of the car body, and about two extra inches on account of the wheels being set in, it would seem that at least that much space beyond the width of the vehicle should be allowed busses which are more difficult than passenger cars to maneuver. To fail to allow busses such space under the experience of the defendants of constant damage being caused and a danger to them and to their passengers being ever present by the narrow lanes, would seem clearly unreasonable and discriminatory and illegal. If the defendants were to permit their busses to be driven in the lanes and a passenger were injured, the defendants would be subject to ordinary damages, and to exemplary damages, under the conditions which are shown to have been known to them.

As a result of the above experience, the defendants have instructed their drivers not to enter the bridge until it is clear of vehicles coming from the opposite direction, but to enter only when the bridge is clear, and then to straddle the center rail. This, of course, requires vehicles coming from the opposite direction to wait until the busses are across the bridge and approaches.

The plaintiff, driving an ordinary passenger car, has been forced to wait for the busses to pass, at various times, and on the theory that the bus was legally required to travel entirely within the lanes marked out on the bridge, has brought this suit for an injunction requiring the defendants to operate their busses in such a manner, and to cease straddling the center rail.

 Bridges are a part of public highways. 11 C.J.S., Bridges, § 45, page 1076.

"The power to regulate and control public bridges is vested in the state legislature, subject to constitutional limitations, and the exercise of such power may be delegated to * * * municipal authorities." 11 C.J.S., Bridges, § 48, page 1077.

 The Legislature of the Territory of Alaska authorized municipal corporations to regulate "the use and operation of motor vehicles within the municipality" by general ordinance. Sec. 2383, 21st subdivision, C.L.A. '33.

Thus, the town of Fairbanks had power to regulate traffic upon said bridge, there being no law or regulation of the United States or Territory of Alaska relative to such traffic.

The town council of Fairbanks has been reluctant to pass such ordinances because of the belief that their power in that respect was circumscribed, inasmuch as the bridge was built and maintained by the Federal Government. Of course, if the Federal Government had laws or regulations governing traffic on said bridge, the Town could not legally pass an ordinance which conflicted with such law or regulations, but when there is no such law or regulations, it is in complete accord with the general plan of our government that the municipality should pass such laws relative to traffic within its boundaries. To deny the town the right to regulate the traffic on the bridge would be as erroneous as to deny the right of the municipal police to arrest a drunk and disorderly person within the confines of a Federal Post Office within the town.

The driver of a government mail vehicle, while engaged in his official duty, must comply with local traffic regulations in instances where no inconsistent rule of conduct has been prescribed for him by Congress or the Postmaster General. Ex parte Willman, D.C., 277 F. 819; Com. v. Closson, 229 Mass. 329, 118 N.E. 653, L.R.A.1918C, 939; Hall v. Com., 129 Va. 738, 105 S.E. 551.

The laws and lawful regulations made pursuant to law in Alaska provide:

Regulation No. 1. "No vehicle operating on the roads or highways of Alaska shall exceed a total width of eight feet. * * *".

Regulation No. 27. "No vehicle shall be backed into any road, street or highway, or moved to the left of the center of any road, street, or highway except at such times as the traffic conditions permit * * *".

"Whenever any persons operating any vehicles shall meet upon any public high-

way in the Territory, the persons so meeting shall reasonably turn their vehicles to the right of the center of the road, so as to permit each vehicle to pass without interfering with or interrupting the other." S.L.A. '43, c. 34, p. 108.

"It shall be unlawful to. purposely obstruct or block traffic by any means whatsoever on any highway or street." Sec. 14, S.L.A. '41, c. 65, p. 163.

A reading of the above laws and regulations shows that they pertain to roads of sufficient width and condition to permit vehicles to pass, without injury to their tires or other parts, and without danger of collision. It is clear that they do not purport to apply to the Chena bridge.

■ Where a part of a highway is made impassable by obstructions,· the statute requiring meeting vehicles to turn to their right refers only to the remaining passable way. Harmon v. Fowler Packing Co., 129 Mo.App. 715, 108 S.W. 610.

■ In approaching a bridge too narrow for two vehicles to pass, a driver should avoid being on the bridge simultaneously with the other vehicle. Melton v. Manning, Tex.Civ.App., 216 S.W. 488.

The statute requiring meeting vehicles to turn to the right does not apply where it is impracticable so to do. Beggs v. Clayton, 40 Utah 389, 121 P. 7.

When an eight foot bus enters upon the bridge in question, such bridge becomes a road too narrow to permit the passage of vehicles coming from opposite directions.

The regulation to keep to the right of the center of the road is not applicable to a one-way street. Hedges v. Mitchell, 69 Colo. 285, 194 P. 620.

An ordinance requiring driving on the right side of the road is not intended to prohibit the use of the left side, and the law is not violated by driving on the left side of the street when the right side is under repair and impassable. Langford v. San Diego Electric R. Co., 174 Cal. 729, 164 P. 398; Farrar v. Whipple, 65 Cal.App. 123, 223 P. 80; Melton v. Manning, Tex. Civ.App., 216 S.W. 488.

■ There is no law or regulation requiring vehicles to keep within the lanes

upon the Chena bridge. If there were, the law or regulation would be invalid, as the lanes are too narrow for the passage, without damage or danger, of all lawful vehicles such as eight foot wide busses, trucks, etc. A bus has just as much right to cross the bridge as does any other type of car. It is notable that lanes ten feet wide are commonly provided in newly constructed roads in many of the states.

■ The center of a highway with respect to the duty of vehicles proceeding in the opposite direction is the center of that part of the highway which is contiguous and open and in a reasonably safe and fit condition for travel by the ordinary mode. Shelley v. Norman, 114 Wash. 381, 195 P. 243.

■ The placing of the rail down the center of the bridge is an obstruction to the use of the lanes, as such, by the eight foot wide busses, and in order to avoid the obstruction, they are justified in straddling the same. Bartlett v. Hammond, 76 Colo. 171, 230 P. 109; Cupples Mercantile Co. v. Bow, 32 Idaho 774, 189 P. 48.

Consequently, when the bridge is clear of vehicles, and a bus enters said bridge or approach, it is entitled to straddle the center rail and to have the right-of-way over all other vehicles coming from the opposite direction. Such vehicles should not enter the approach to the bridge, but should wait until the bus has passed. If they do so enter, they are subject to the superior right-of-way, and would be willfully blocking the highway if they refused to back off the bridge and approach. J. M. McAfee v. Martin, 34 Ga.App. 247, 129 S.E. 168.

Section 3, Chapter 49, page 114, Session. Laws of Alaska 1947, provides:

"This Act shall pertain to streets of municipalities as well as to roads and highways. The * * * highway patrol officers and municipal police are charged with the enforcement, in their respective capacities, of this Act and the regulations promulgated by the· Board hereunder."

It appears therefore that the defendants have instructed their drivers to proceed in a lawful manner, and that when such

drivers enter the approach to said bridge and there is no vehicle upon the bridge, the bus has a right to straddle the center rail and has the right-of-way over all other vehicles coming in an opposite direction across the bridge and the approaches.

The plaintiff therefore is not entitled to any injunction against the defendants.

Findings of Fact and Conclusions of Law may be drawn in accordance with what is said before.