**COMMONWEALTH OF VIRGINIA**

v.

**Lloyd W. STIFF.**

**Crim. No. 1894.**

United States District Court
W. D. Virginia, at Harrisonburg.
Aug. 24, 1956.

Francis C. Lee, Asst. Atty. Gen., of Va., for plaintiff.

Thomas J. Wilson, Asst. U. S. Atty., for defendant.

PAUL, Chief Judge.

This matter originated as a criminal prosecution against the defendant in the Trial Justice Court of Frederick County, Virginia, which has been removed to this court pursuant to the provisions of Title 28 § 1442, United States Code.

The facts have been stipulated and are, so far as essential to narrate, substantially as follows: On February 9, 1956, the defendant was operating on one of the highways of the State of Virginia in Frederick County a semi-trailer on which was loaded a large crane-crawler. The crane and the vehicle on which it was being transported were both the property of the United States. The defendant was at the time and now is an employee at the Federal Reformatory for Women at Alderson, West Virginia, of the Bureau of Prisons of the United States Government. The transportation in which he was engaged was under authorization of the Warden of the Alderson Reformatory, who had acquired the crane on authorization of the Bureau of Prisons, and the crane was in course of transportation from some place in New Jersey to Alderson, West Virginia.

In the course of its movement over the Virginia highways this vehicle and its load were weighed at the inspection station maintained by the Virginia Highway Department at Stephens City, in Frederick County, as a result of which it was determined that the front axle weight was 6,240 pounds, the second axle weight was 13,860 pounds; and the rear axle weight was 27,800 pounds; making a gross weight of 47,900 pounds, this being 7,900 pounds in excess of the 40,000 pounds maximum weight permitted on said highway under the provisions of the Virginia law. The Virginia statute, Code of Virginia, § 46–338.1, then in force provided for penalties for excess weight in the form of fines, the amount of which was determined by the extent of the excess and which in this case amounted to $885. The defendant was arrested by the Virginia State Police and charged with violation of 46–336 of the Virginia Code in the transportation of a vehicle of a weight in excess of that permitted. The defendant was required to post a cash bond of $885 plus $7.25 costs pending trial. This bond was furnished by the Department of Justice and the defendant was then allowed to continue with the transportation of his vehicle under permission of the State Highway Department.

The case was removed to this court at the instance of the defendant's employer and the United States Attorney appears as his counsel here. The sole question in the case is that raised by the contention that defendant, as an employee of the United States engaged in the performance of the duties of his employment, is immune from state control in the performance of those duties. More baldly stated the contention seems to be that since this vehicle was owned by the United States and being operated in the business of the United States it was immune from the laws of the state regulating traffic on its highways.

To support this contention the defendant goes back to McCulloch v. State of Maryland, 4 Wheat. 316, 4 L.Ed. 579. Counsel also rely on Johnson v. State of Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126.

McCulloch v. State of Maryland involved the Bank of the United States, which had been incorporated under an act of Congress and had established a branch in Baltimore. Thereafter the legislature of the State of Maryland passed an act to impose a tax on all banks or branches thereof, in the State of Maryland, not chartered by the state legislature. This act as applied to the Bank of the United States was held by the Supreme Court to be unconstitutional. The opinion in McCulloch against Maryland contains a lengthy discussion of various aspects of state sovereignty and the relation between the states and the Union which appear to be summed up in the statement "that the sovereignty of a state extends to everything which exists by its own authority" but that it does not extend "to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States." 4 Wheat. at page 429.

Johnson v. State of Maryland, 254 U.S. 51, 41 S.Ct. 16, 65 L.Ed. 126, involved the case of an employee of the United States

Post Office Department engaged in operating a government motor truck in the transportation of mail over a highway in Maryland. He was arrested in Maryland and fined for not having obtained a license from the state. It appears that to obtain a license he would have had to submit to an examination as to his competence and to have paid a fee of three dollars. In holding that the defendant could not be subjected to this requirement the court says in part:

"With regard to taxation, no matter how reasonable, or how universal and undiscriminating, the State's inability to interfere has been regarded as established since McCulloch v. [State of] Maryland, 4 Wheat. 316, 4 L.Ed. 579. The decision in that case was not put upon any consideration of degree but upon the entire absence of power on the part of the States to touch, in that way at least, the instrumentalities of the United States * * *.

* * * * * *

"Of course an employee of the United States does not secure a general immunity from state law while acting in the course of his employment. That was decided long ago by Mr. Justice Washington in United States v. Hart, Fed.Cas.No. 15,316, Pet.C.C. 390. It very well may be that, when the United States has not spoken, the subjection to local law would extend to general rules that might affect incidentally the mode of carrying out the employment—as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets. Commonwealth v. Closson, 229 Mass. 329, 118 N.E. 653, L.R.A.1918C, 939.

"It seems to us that the immunity of the instruments of the United States from state control in the performance of their duties extends to a requirement that they desist from performance until they satisfy a state officer upon examination that they are competent for a necessary part of them and pay a fee for per-

mission to go on. Such a requirement does not merely touch the Government servants remotely by a general rule of conduct; it lays hold of them in their specific attempt to obey orders and requires qualifications in addition to those that the Government has pronounced sufficient. It is the duty of the Department to employ persons competent for their work and that duty it must be presumed has been performed. Keim v. United States, 177 U.S. 290, 293, 20 S.Ct. 574, 44 L.Ed. 774."

McCulloch v. State of Maryland was a case in which a state undertook to tax an agency of the federal government created under an act of Congress and it presents no similarity to the instant case in either fact or principle. Johnson v. State of Maryland in some respects approaches somewhat nearer the case now before the court, but is not determinative. In that case an employee of the United States Post Office Department who had been found by his superiors to be competent for his position was engaged in the performance of duties resting on the obligation of the federal government to maintain the postal service. What the court held was that the State of Maryland could not impose upon the performance of his duties restrictions and conditions which involved an examination designed to satisfy the state authorities of his competence and required the payment of a tax for the privilege of continuing his federal employment.

The present case appears to me to come under that class which involves the question of how far federal employees, while in performance of their duties, are subject to rules imposed by a state or a municipality for the regulation of traffic on the highways or streets. One of the first cases raising this question was United States v. Hart, decided in 1817 and reported in Fed.Cas.No. 15,316; and which is referred to in the opinion in Johnson v. State of Maryland. In that case a constable of the city of Philadelphia arrested the driver of a stage carrying the mail on a charge that he was

driving at an immoderate rate of speed in violation of a city ordinance. The constable was indicted in the federal court for interfering with the transportation of the mail. In an opinion by Mr. Justice Washington the constable was held not guilty. A syllabus of the case (supported by the text of the opinion) states:

> "The act of congress, prohibiting the stoppage of the mail, is not to be so construed as to prevent the arrest of the driver of a carriage in which the mail is carried, when he is driving through a crowded city at such a rate as to endanger the lives of the inhabitants."

In Commonwealth v. Closson, 229 Mass. 329, 118 N.E. 653, L.R.A.1918C, 939, it was held that the driver of a vehicle transporting United States mail is not exempt from the operation of state statutes and municipal ordinances regulating traffic on the highways, although by federal statutes the highways are post roads. The court says, in part:

> "The designated streets or ways are not however instrumentalities created by the general government, where 'exemption from state control is essential to the independent sovereign authority of the United States within the sphere of their delegated powers.' * * * * While undoubtedly they are post roads under the Act of Cong. March 1, 1884 * * * yet the ways remain public ways laid out and maintained by the Commonwealth, which has the exclusive power not only of alteration, and of discontinuance, but to make and enforce reasonable regulations for their use."

In Hall v. Commonwealth, 129 Va. 738, 105 S.E. 551, the operator of a government owned automobile truck carrying the United States mail was found guilty and fined for driving on a public street at a rate of speed in excess of that permitted by the state law. The court, in discussing and distinguishing other cases bearing on the matter involved, held that in the absence of any showing that the driver was under orders from the Post Office Department to maintain a time schedule or to proceed at a designated speed there was no interference with his federal duties by requiring him to observe the state law.

In Vogler v. Greimann, D.C.Alaska, 78 F.Supp. 575, at page 577 we find the following statement:

> "The driver of a government mail vehicle, while engaged in his official duty, must comply with local traffic regulations in instances where no inconsistent rule of conduct has been prescribed for him by Congress or the Postmaster General." (Citing cases.)

■■ The cases above cited dealt in each instance with the violation of state or municipal traffic regulations by persons engaged in carrying the United States mails. The handling of the mails is a responsibility of the federal government imposed on it by the Constitution. Even so the trend of authority is to the effect that in performing these federal duties the carriers of the mails are subject to reasonable local regulations which are not inconsistent with the directions of their responsible superiors and observance of which is not in derogation of sovereign authority of the United States. Even more strongly should this rule apply to the facts of the instant case.

■ The use of the public highways is a matter of constant consideration and attention by the legislatures of every state in the Union. It is one of concern not only for the safety of travelers on the roads but also for the protection and upkeep of the highways in the face of the ever-mounting traffic. The State of Virginia has spent and is spending many millions of dollars in the building and maintenance of its highway system. There can be no doubt of the right of the state to adopt reasonable rules to protect the enormous investment which it has made primarily for the benefit of its own citizens. In this connection certain excerpts from the opinion in South Carolina State Highway Department v. Barn-

well Bros., 303 U.S. 177, 625, 58 S.Ct. 510, 513, 82 L.Ed. 734, are pertinent. This case involved the right of the state to enforce maximum weight regulations against trucks engaged in interstate commerce. Remarking that Congress had not undertaken to regulate the weight of vehicles in interstate traffic and that the state's regulations did not discriminate against out-of-state vehicles, the court says in part:

"South Carolina has built its highways and owns and maintains them."

And again: "Few subjects of state regulation are so peculiarly of local concern as is the use of state highways. * * * Unlike the railroads, local highways are built, owned, and maintained by the state or its municipal subdivisions. The state has a primary and immediate concern in their safe and economical administration."

The purpose of the state laws regulating the size and weight of vehicles on the highways is to protect the safety of travelers and to protect the roads from unreasonable wear. And where a state has adopted such laws based on sound engineering standards it seems obvious that it cannot permit them to be violated at the whim of anyone who chooses to ignore them, any more than it can allow drivers of motor vehicles to drive on the wrong side of the road or to run past red traffic lights simply because they choose to.

I have not overlooked such cases as are exemplified by State of Rhode Island v. Burton, 41 R.I. 303, 103 A. 962, L.R.A. 1918F, 559, where it was held that a member of the United States Naval force on duty as despatch bearer was not subject to state speed laws when traveling on a public highway in war time under orders from his superiors to proceed with all possible despatch in performing a duty assigned him. In that case the importance to the United States of the defendant's travel and its exigent nature were such as to render it immune from state interference. The court held state regulations must be held subordinate to exigencies of military operations by the federal government in time of war. The facts in the instant case are so widely different as to render the cited case and similar ones inapplicable here.

The State of Virginia has made provision for the movement of overweight vehicles in case of exigency. The Code, § 46–339, provides that the State Highway Commission may in its discretion, and upon application and for good cause shown, issue permits for the movement of overweight vehicles, designating the routes over which and conditions under which the movement may take place. The United States Department of Defense, which probably has more occasions than any other to use large and heavily loaded vehicles in highway traffic has for some years followed the practice of seeking such permits when occasion arose for them and the state in turn keeps the Department informed as to names and addresses of the officials who are authorized to issue such permits. In fact the Department of Defense has in writing directed to the appropriate authorities in Virginia (and presumably in all other states) declared it to be "the policy of the Department of Defense to conform to state and local laws, regulations and ordinances relating to weight and size limitations of motor vehicles."

It appears therefore that the United States, at least through one of its agencies, has recognized the applicability of state statutes of the sort in question here to vehicles owned and operated by the federal government under the conditions disclosed in this case. It may be urged that this indicates only a willingness to comply and not admission of the right to enforce compliance. However that may be, it is my conclusion that under such a state of facts as exists here federally owned and operated vehicles are not immune from the provisions of the overweight laws.

The defendant must therefore be found guilty, and the fine required by the Virginia statute, namely $885, is imposed upon him, together with costs.