BISHOP, J.
 

 The defendant was convicted and sentenced to five days’ imprisonment for driving a vehicle upon San Fernando Road, north of the Lankershim Boulevard intersection, at a rate of speed prohibited by the basic speed law. The basic speed law is set forth in section 510, Vehicle Code, in these words: “No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway, and in no event at a speed which endangers the safety of persons or property.” We have concluded that the evidence supports the conviction and that no prejudicial errors were committed during the course of
 
 *Supp. 865
 
 the trial. It follows that.the final judgment of conviction, from which the appeal was taken, should be affirmed.
 

 The people’s two witnesses were police officers. One testified (and it was stipulated that the other’s testimony would be substantially the same) that he saw the defendant drive a motor bus, just before the noon hour, down the center lane of San Fernando Road, past about one hundred other vehicles that were going in the same direction as the defendant and some forty that were going in the opposite direction, and that during the two and one-half miles that the officers paced him the defendant’s rate of speed was seventy-three miles per hour. The defendant, as a witness, testified that his speed was not over fifty miles per hour, but when stopped by the officers and told that he had been traveling approximately seventy-three, his statement was not a denial of their statement, but the assertion that he was late and attempting to make up time. The conflict between the defendant’s version of the facts, as related by himself and his witnesses, and that of the officers, was resolved by the trier of fact against the defendant. Defendant’s argument that the evidence does not support the conclusion that he violated the basic speed law is therefore burdened with the fact proven that he was driving at the rate of seventy-three miles per hour.
 

 The defendant concedes that a speed in excess of forty-five miles per hour was (at the time involved) presumably unlawful, citing
 
 People
 
 v.
 
 Banat
 
 (1940), 39 Cal. App. (2d) (Supp.) 765 [100 Pac. (2d) 374], which so construes section 511, Vehicle Code. But, defendant argues, no accident or near accident resulted from his excessive speed, so that the presumption is rebutted. Furthermore, he notes, no act of his was proven other than that he drove at seventy-three miles per hour. Whatever may be argued about the more serious crime of reckless driving (section 505, Vehicle Code, considered on this point in
 
 People
 
 v.
 
 Nowell
 
 (1941), 45 Cal. App. (2d) 811 [114 Pac. (2d) 81]), it is clear that mere speed constitutes a violation of section 510, and the absence of an accident, actual or near, neither in law nor logic tends to prove that an excessive rate of speed was reasonable or prudent nor that it did not of itself endanger the safety of persons and property. We have no hesitancy in holding that the conviction finds ample support in the evidence.
 

 
 *Supp. 866
 
 One of the defendant’s grounds of appeal is that “The court erred in restricting the argument of counsel.” The record before us does not reveal how much argument was allowed, but counsel made at least a beginning of his argument by stating that the evidence failed to sustain the charge of violating the basic speed law. The record before us then recites that “The Court replied that he did not believe argument was necessary, and stated that he would make a finding that the speed of 73 miles per hour under the circumstances disclosed by the evidence constituted a violation of section 510 of the Vehicle Code.” These words are reasonably susceptible of interpretation as a statement of the trial court, not that the defendant’s counsel would not be permitted to argue, but that the trial court saw no good to come from argument, especially argument in support of the contention that a speed of seventy-three miles per hour, under the conditions revealed in this case, was reasonable, prudent and endangered neither person nor property. Under this interpretation, counsel was dissuaded, not prevented, from making further argument, a fact of which he may not complain.
 

 But if we take the view that counsel may with reason have taken, and regard the statement of the trial judge as an indication that there could be no argument, even so we are of the opinion that in this case a reversal of the judgment is not justified. The constitutional right “to appear and defend, in person and with counsel” Const., art. I, sec. 13), when taken out of the abstract and given concrete application, undoubtedly confers a right to have the benefit of appropriate argument by counsel. Moreover, the duty of courts not only to administer justice but also to appear to do so, is best discharged by allowing argument. However, it is within the power and the duty of the court to determine what are the reasonable limits of argument (fifteen minutes was upheld as a reasonable limitation in
 
 People
 
 v.
 
 Mendosa
 
 (1918), 178 Cal. 509, 510 [173 Pac. 998]; twenty minutes, in
 
 People
 
 v.
 
 Shayer
 
 (1933), 135 Cal. App. 755, 758 [28 Pac. (2d) 48]) and where, as in the case before us, the trial was had before the court without a jury, “the argument of counsel is directed to the court alone, [and] the court is in far better position than counsel to decide when it is sufficiently informed as to the subject under considera
 
 *Supp. 867
 
 tion. When the court reaches the point that it feels that it is fully advised as to the question under discussion and ready to rule upon the same, and, therefore, requires no further enlightenment from counsel, it is surely clothed with adequate power and authority to order the argument at an end. ...” These remarks appearing in
 
 Hallinan
 
 v.
 
 Superior Court
 
 (1925), 74 Cal. App. 420, 426 [240 Pac. 788], respecting argument in support of an objection made during the course of trial, are not inapposite in the situation under review. The trial had occupied less than the afternoon session. There were only five witnesses who testified and the record of their testimony is encompassed in four typewritten pages. The question at issue was simple. The trial judge, who sat without a jury, was a veteran jurist in traffic eases. In view of these facts, it was within his discretion, as indicated in
 
 Hallinan
 
 v.
 
 Superior Court,
 
 to restrict the argument as he did. But, if it should be considered error not to have permitted defendant’s counsel to have argued further, the error was one not resulting in a miscarriage of justice and so is not a ground for a reversal of the judgment. (Const., art. VI, sec. 4%.)
 

 The defendant was transporting twelve sacks of United States mail when he was observed speeding and on the basis of this fact he further contends that the trial court erred in not permitting him to testify as to the hour that the mail was due in Los Angeles. In order to determine the validity of defendant’s contention, we have considered this question: Is one engaged in transporting United States mail subject to state regulations respecting the speed (in particular) at which a motor vehicle may be operated? We are of the opinion that this question,, being one wherein the field of force of a state statute is found to fall partly within the orbit of a federal agency, is not to be answered by looking to see whether there is a conflict between the rights of two sovereigns, but rather by discovering whether the attempt of the state to discharge its responsibilities unduly interferes with the endeavor of the federal government to perform its functions. Both reason and authority agree that the state’s regulations of traffic with respect to speed do not unduly interfere with the dispatch of the United States mail, and the regulations are therefore valid.
 

 
 *Supp. 868
 
 The earliest ease on the subject is itself of no great authority, but it is important because it blazed the trail. It arose in the city of Philadelphia where a city ordinance made it unlawful to drive at an immoderate rate of speed, so as to endanger the citizens of the city. The driver of a stage coach carrying mail was stopped by Hart, one of the high constables of the city, because the stage was going at an immoderate rate, so as to endanger the lives and safety of the citizens, “some of the witnesses supposed it to be at the rate of eight or nine miles an hour.” Hart, who stopped the stage, was indicted for knowingly and wilfully retarding the passage of the mail, under section 7 of an act regulating the Post Office Establishment, passed by the Congress in 1810 (2 Stats. 595), which made it a public offense for any person to “knowingly and wilfully obstruct or retard the passage of the mail, or of any driver or carrier, or of any horse or carriage carrying the same. ” (Section 201 of the Criminal Code, United States Code Annotated, Title 18, see. 324, now provides: “Whoever shall knowingly and willfully obstruct or retard the passage of the mail, or any carriage, horse, driver, or carrier, or car, steamboat, or other conveyance or vessel carrying the same, shall be fined not more than $100, or imprisoned not more than six months, or both.”) At some point in the proceedings before the matter was submitted to the jury, the trial judge (Mr. Justice Washington, on circuit) stated
 
 (United States
 
 v.
 
 Hart
 
 (1817), Pet. C. C. 390, 26 Fed. Cas. 193, 194, Cas. No. 15,316) : “there is in truth no collision between - this ordinance and the act of congress on which this indictment is founded. If the mail carrier should violate the ordinance, the act of congress does not shelter him from the penalty imposed by the ordinance.” Then the learned judge pointed out that the ordinance did not authorize the constable to stop the stage, but concluded that if the stage was being driven as contended (a question for the jury), then it constituted a common law breach of the peace which it was the defendant constable’s duty to bring to an end, and that in stopping the stage to stop the breach of the peace he did not violate the federal statute although ‘ ‘ a temporary stoppage of the mail may be the consequence. ’ ’
 

 Under date of June 1, 1852, United States Attorney General Crittenden rendered an opinion to the Postmaster General (5 Opinions of Attorney General 554), in response to a
 
 *Supp. 869
 
 query, ‘ ‘ whether . . . municipal corporations have . . . the right to impede the progress of trains carrying the United States mail, or to make the running of such trains, at a speed greater than that prescribed by the corporation [six miles per hour], subject the rail-road company or its officers to a pecuniary penalty. ’ ’ Basing his conclusion largely on the opinion in the Hart case, the attorney general replied (in part) : “These municipal corporations have a right to make ordinances for regulating the speed of rail-road cars and their trains within the corporate limits, as well of those carrying the mail of the United States, as of those which do not; the fact of conveying the mail does not exempt the officers of the rail-road company from the fine for a breach of such regulations; they do not conflict with the act of Congress.” The 9t,h section of the act of Congress referred to was “in the precise words” of the statute involved in the Hart case.
 

 The opinion in the Hart case and the opinion of the attorney general were given recognition in
 
 Johnson
 
 v.
 
 Maryland
 
 (1920), 254 U. S. 51 [41 Sup. Ct. 16, 65 L. Ed. 126], in these words: “Of course, an employee of the United States does not secure a general immunity from state law while acting in the course of his employment. That was decided long ago by Mr. Justice Washington in
 
 United States
 
 v.
 
 Hart,
 
 Pet. C. C. 390, Fed. Cas. No. 15,316; 5 Ops. Atty. Gen. 554. It very well may be that, when the United States has not spoken, the subjection, to local law would extend to general rules that might affect incidentally the mode of carrying out the employment, as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets.
 
 Com.
 
 v.
 
 Closson.
 
 ...” The case of
 
 Commonwealth
 
 v.
 
 Closson
 
 (1918), 229 Mass. 329 [118 N. E. 653, L. R. A. 1918C, 939], cited in the conclusion of the quotation just made, dealt with the conviction of a mail carrier, who, acting under instructions from his superiors, had driven on the left side of a highway and had made a left turn without passing to the right of and beyond the center of an intersecting street, as required by the local traffic regulations. The Supreme Judicial Court of Massachusetts recognized that the roads, upon which the defendant was officially engaged when he disobeyed the local traffic rules, were undoubtedly post roads, but concluded (p. 334) : “ ... yet the ways remain public -ways
 
 *Supp. 870
 
 laid out and maintained by the commonwealth, which has the exclusive power not only of alteration, and of discontinuance, but to make and enforce reasonable regulations for their use. Nor do the facilities thereby afforded for transportation of the mails confer extraordinary rights upon mail carriers to use the ways as they please, or necessarily or impliedly do away with the power of supervision and control inherent in the state.”
 

 The ultimate answer to our question will, of course, come when the United States Supreme Court speaks on the subject; so far as our research has uncovered there is no decision of that court, or of any federal court, that speaks with authority. However, what expression we find in the federal cases supports that which we believe to be the rational answer; and such state decisions as there are are unanimous in upholding the validity of state regulations of speed even when applied to carriers of the mail. A city ordinance making it unlawful for trains to exceed four miles per hour was held applicable to a train carrying mail in
 
 Whitson
 
 v.
 
 City of Franklin
 
 (1870), 34 Ind. 392. A similar ordinance, with a ten mile speed limit, was held to be valid as against the claim that it interfered with interstate commerce and the United States mail, in
 
 Chicago & A. Ry. Co.
 
 v.
 
 City of Carlinville
 
 (1902), 200 Ill. 314 [65 N. E. 730, 93 Am. St. Rep. 190, 60 L. R. A. 391], A speed limit of fifteen miles an hour, established by the State of Virginia, had been violated by one Hall, the operator of a government mail truck carrying United States mail. The evidence revealed that he was seventeen minutes late, when the excess speed was indulged in, but, the court pointed out
 
 (Hall
 
 v.
 
 Commonwealth
 
 (1921), 129 Va. 738 [105 S. E. 551]), that there was no evidence that the mail schedule officially established could not be complied with if the state speed limits were observed, and so continued: 1 ‘ Such being the situation, we have no hesitancy in holding that the state statute in question is a valid exercise of the police power of the state in so far as its speed limit provisions are involved in this case, and should have been obeyed by the accused.”
 

 We conclude, therefore, that the defendant was not relieved from the duty of observing the state speed law by the fact that he was discharging the duty of transporting the United States mail, and if it was a fact that he was late in the dis
 
 *Supp. 871
 
 charge of the latter duty, that fact did not relieve him of his obligation under the former.
 

 The judgment that he be imprisoned five days was authorized by section 762, Vehicle Code, and the exercise of the authority does not appear to us to have been an abuse of discretion.
 

 The judgment appealed from is affirmed.
 

 Shaw, P. J., and Fox, J.
 
 pro tem.,
 
 concurred.
 

 Appellant’s petition for a rehearing was denied October 14, 1941.