[Crim. No. 1010.   Fourth Dist.   Feb. 18, 1955.]

THE PEOPLE, Respondent, v. GABRIEL VINCENTE MARCIAS, Appellant.

Gabriel Vincente Marcias, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

BARNARD, P. J.—The defendant was charged with the possession of a firearm in violation of section 12021 of the Penal Code. He was also charged with four prior convictions, with terms served at San Quentin. These included a sentence for robbery in 1942, one for escape from the penitentiary in 1943, one in 1945 for assault with a deadly weapon, and one in 1945 for possession of a weapon in violation of section 4502 of the Penal Code. The defendant pleaded not guilty to the offense charged, but admitted the prior convictions. Trial by jury was duly waived and he was tried before the court, the trial judge finding him guilty as charged. He was sentenced to imprisonment in state prison, the sentence to run concurrently with relation to any unserved sentences. He filed notice of appeal from the judgment and from "the motion denying a new trial." The record discloses no motion for a new trial or action thereon.

The evidence discloses that the defendant was out on parole at the times here involved. About the middle of February, 1954, he purchased some clothing at a pawnshop in San Diego. On that occasion he said he would like to buy a gun, and the saleslady took some guns out of a counter so that he could look at them. The defendant admired a Colt .32 automatic pistol which was numbered 347079. This gun had one clip but did not have a holster. The saleslady was called away and when she returned the defendant handed a gun back to her and she did not then notice that a gun was missing. About the same time the defendant rented Locker No. 5 at a locker club in San Diego on a weekly basis. He rented it under an assumed name and made three weekly payments. The key to the locker was usually left in the office of the locker club but he testified that on one occasion he took the key away with him.

On the morning of March 1, 1954, this locker was opened at the request of a police officer and the officer found this automatic pistol on a shelf in the locker. It was in a leather holster, and the officer also found a clip and a box of ammunition.

During that day this officer had a talk with the defendant's parole officer with respect to the defendant and the gun. On the evening of that day, while the parole officer was interviewing the defendant, the police officers arrested the defendant. On investigation it was found that this automatic pistol was missing from the pawnshop, and the records of the shop showed that it had not been sold.

On March 2, 1954, the officer who found the gun had a talk with the defendant at the jail. The defendant told the officer that a boy named ''Don'' had given him the gun and he had rented the locker to keep the gun; that Don was an ex-felon but he did not know his last name; that he had bought the holster and another clip because the clip which was in the gun originally did not work too well; that no one else had ever gone to his locker with him; and that he had not worn or carried the gun. When the officer pointed out that the holster was new but showed some wear the defendant said he remembered giving the gun on one occasion to Don and that Don had taken it away and later returned it to the defendant. The officer told the defendant that the gun had been stolen from this pawnshop, and the defendant said that he did not steal it. He said that he had bought some clothing at this pawnshop, but denied that he had looked at any guns.

At the trial the defendant testified that he had been going around with a girl named Marion; that Marion asked him to keep an overnight bag for her and he agreed to do so; that one of the fellows with her asked the defendant to keep a bag for him in which there was some camera equipment; that he refused to do this because his parole officer came to his room once a week and if he saw the camera equipment he might inquire about it; that the fellow suggested putting it in a locker; that they went to this locker club and the defendant paid the rent for the locker; that he then got the two bags and put them in the locker; that subsequently, at this person's request, he went in and got the bag with the camera equipment; that a week later Marion asked him to get some articles she had left in the bag; that the defendant did so and then saw the gun in her bag; that Marion said her uncle had given her the gun; that soon afterward the defendant found that Marion's group were working on an extortion plot in which the camera equipment was used; that he told Marion he wanted all of her things out of this locker; that during this period Marion had told him that the clip on the gun was ''messed up'' and asked him to buy another, which he did; that defendant was

led to believe that someone in Marion's group had taken her bag out of the locker; that he found that they had failed to get the gun out of the locker, and later received a note saying that they had gone to Miami, but would be back soon and for him not to worry about the gun; that a week or 10 days elapsed and he began to worry about the gun; that he did not want to remove the gun from the locker because he might be stopped by the police; that on March 1st he paid a week's rent on his room and then took his clothes and put them in a locker at the bus depot; that he walked around town determining whether leaving would be the wisest thing to do; that he stalled around until 7 p. m. when his parole officer usually arrived; that he finally decided that the best thing was to explain the situation to the parole officer and went to his room and waited for the officer; and that while he was explaining the matter to the parole officer the police officers arrived. On cross-examination, the defendant testified that he had told his parole officer and the police officers when he was arrested that Don had given him the gun; that he had not told them anything about any girl having the gun; that he did not know where Marion or Don were; that he had never given the gun to Don to take out of the locker; that Don did go there once with the defendant and when the locker was opened Don reached in and got the gun himself; that Don replaced the gun without the defendant knowing it; that he had known the gun was back in the locker for about 10 days; and that he let Don take the gun out of the locker when Don wanted it, but Don took it at defendant's request.

The appellant contends that the evidence is insufficient to support the judgment. He admits that he paid rent for the locker and had access to it when the gun was there, but argues that the gun did not come into his possession voluntarily; that when he placed the overnight bag in the locker he had no knowledge that it contained the gun; and that the evidence shows that when he became aware that the gun was in the locker he made every effort to have it removed and returned to the rightful owner, and when this failed he consulted his parole officer about the gun. Shortly after his arrest the appellant told the officer that Don had given him the gun and that he had rented the locker to keep the gun. He told a different story while on the witness stand which was full of variations and inconsistencies, and which was not well calculated to inspire confidence in its credibility. By his own story he admitted possession and that he had exercised

control over the weapon. His explanation of that possession was not satisfactory and was not believed by the trial judge. The evidence justifies the inference that he took this gun from the pawnshop and the evidence as a whole, including the appellant's own testimony, is sufficient to sustain the judgment.

It is also contended that the trial judge was prejudiced against the appellant and "prejudged him guilty without allowing oral argument." After both sides had rested, the judge stated that "This case can be decided without argument" and proceeded to state that the evidence showed that the appellant did have the gun in his possession. Counsel for the appellant said he would like to make one comment and went on to say that the evidence disclosed that the gun came into appellant's possession involuntarily. The court said: "I don't believe the story," and went on to comment on the inconsistent statements made by the appellant, and the fact that he had an opportunity to get rid of the gun. No further argument was offered, for obvious reasons, and the court then found the appellant guilty. The court listened to everything counsel had to say and there is no indication that counsel desired to make any further argument. The situation was similar to that appearing in *People* v. *Don Carlos,* 47 Cal. App.2d Supp. 863 [117 P.2d 748], and neither prejudice nor reversible error appears.

The appellant contends that he was inadequately represented at the trial by the court-appointed counsel. It is argued that after the preliminary examination the appellant did not have an opportunity to talk to counsel until two days before his trial; that counsel failed to object to appellant's being handcuffed and shackled, except at the time of judgment; that counsel failed to call witnesses in appellant's behalf who could corroborate in part the appellant's testimony; and that it was necessary for the appellant to prepare his own notice of appeal after judgment of conviction. The contentions that appellant had no opportunity to talk to counsel, and that his counsel failed to call material witnesses are not supported by the record. Appellant's attorney had had a long experience in trying criminal cases in San Diego, and the record does not show that he was appointed by the court. This counsel represented this appellant at the preliminary hearing and at the trial. His conduct of the trial, including the cross-examination of witnesses, was all that could be expected of any attorney. There is nothing in the record to indicate that this attorney did not make the neces-

sary preparation, or that he failed to call any witnesses requested or suggested by the appellant. The evidence strongly indicates that the appellant did not know where any such witnesses were to be found, and that he did not suggest to his counsel any other evidence or testimony that might possibly be procured.

It is further contended that the placing of the appellant in solitary confinement very shortly after his arrest, and throughout his trial, "deprived him of his full facilities to conduct his defense." It is argued that this solitary confinement so affected appellant's mind that he was deprived of his full mental faculties and was unable to carry out a trend of thought while on the witness stand so that he repeated himself, "and at times his testimony appeared to be little more than jibberish." Good reason appears for keeping the appellant in solitary confinement, and the record does not support the contention that this affected his ability to testify. His testimony takes up 47 pages of the transcript and indicates a high degree of mental agility. Aside from an over-developed imagination no mental defect appears, and there is nothing in the record to indicate that he was not able to cooperate with counsel who had charge of conducting his defense.

It is further contended that the handcuffing and shackling of defendant throughout his trial deprived him of a fair trial. The record discloses no request that the appellant not be kept under restraint while in the courtroom. The only reference to this matter in the entire record appears at the time of sentencing when defense counsel, in making a plea for a light punishment, referred to the appellant's confinement and to his having been brought into court "with leg irons and handcuffs on him." At that time the trial judge remarked that the appellant had demonstrated to the sheriff that he would escape if given the slightest chance, and that the sheriff could not be blamed for bringing him into court that way. The matter was not previously called to the attention of the court, and nothing was brought out as to the circumstances to which the judge referred. It does appear that one of appellant's prior convictions was for an escape from the penitentiary, and the appellant admitted at the trial that he had escaped from the San Diego police in 1942. There was no jury present and there is nothing in the record to indicate any prejudice.

█ In his closing brief appellant argues that he was prejudiced by the refusal of this court to appoint an attorney to represent him on this appeal. The appellant applied for and obtained three extensions of time for filing his opening brief, covering the period from July 29 to November 7, 1954. He filed his opening brief on October 25, and the respondent's brief was later filed. After the time for filing a closing brief had expired the appellant asked for a further extension of 30 days in which to file the closing brief and, for the first time, asked for the appointment of counsel to represent him. This request was denied as having been made too late. The appellant was later advised that if he cared to submit a closing brief prior to the hearing which had been set for February 8, 1955, that brief would be considered, and such a brief was filed. Under these circumstances the appellant waived his right to apply for the appointment of counsel, and was not justified in further delaying the case through that expedient. Appellant's briefs demonstrate that he had able legal help in their preparation and no possible prejudice appears.

The purported appeal from the denial of a new trial is dismissed. The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 16, 1955.