# Disaster Assistance and the Supremacy Clause

As an agency of the United States, acting pursuant to a valid delegation of the President's statutory authority to provide disaster assistance to states, the Federal Emergency Management Agency (FEMA) is not subject to state regulations or prohibitions which would impede the performance of its federal functions. However, the Supremacy Clause cannot be relied upon by FEMA to shield it from all state regulation of or objections to its disaster relief activities.

June 26, 1981

## MEMORANDUM OPINION FOR THE GENERAL COUNSEL, FEDERAL EMERGENCY MANAGEMENT AGENCY

You have asked for our opinion whether a state other than the state requesting assistance may, through enforcement of its laws and regulations, prohibit or substantially frustrate actions of the Federal Emergency Management Agency (FEMA) necessary to provide disaster assistance under the Disaster Relief Act of 1974, 42 U.S.C. §§ 5121–5202 (the Act). Your question envisions a situation in which FEMA, as an incident to providing disaster relief in a state which has requested it and for which the President has declared an emergency or major disaster, deems it necessary to conduct activities either within or which affect another state and which are objectionable to the latter state. You characterize your request as "unavoidably general." Treating it as general, we conclude, in the abstract, that, under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, FEMA, as an agency of the United States, is not subject to state prohibitions while administering disaster relief under the Act, as authorized by Congress and the President.[1] This conclusion, as is your question, is unavoidably general and is subject to the caveats discussed below.

In broad terms, it has been established since the Supreme Court's landmark decision in *McCulloch* v. *Maryland,* 17 U.S. (4 Wheat) 316 (1819) that "the states have no power . . . to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the general government." *Id.* at 435. From this rule has flowed the corollary that, absent its consent, "the activities of the Federal Government are free

---

[1] Authority to administer disaster relief under the Act is vested in the President The President has delegated his authority to the Director of FEMA. Exec. Order No. 12148 § 4–203, 3 C.F.R. 412 (1979)

from regulation by any state." *Mayo* v. *United States,* 319 U.S. 441, 445 (1943). These rules are subject to nuances. For instance, there is room for the states to tax and regulate the conduct of federal contractors in certain respects and under certain circumstances even though their actions may have an economic impact that indirectly burdens procurement by the United States. *See generally,* D. Weckstein, *State Power Over Intrastate Movement of Federal Property,* 11 Baylor L. Rev. 267 (1959) and cases cited therein at 273–81. But the Supreme Court has uniformly struck down, as violative of the Supremacy Clause, the direct, unconsented application by the states of their laws to the United States, its instrumentalities, and its employees working within the scope of their government employment. *E.G. Hancock* v. *Train,* 426 U.S. 167 (1976); *Mayo* v. *United States, supra; Arizona* v. *California,* 283 U.S. 423 (1931); *Johnson* v. *Maryland,* 254 U.S. 51 (1920); *Ohio* v. *Thomas,* 173 U.S. 276 (1899). We believe, based on this case law, that state attempts to regulate directly or prohibit the conduct of activities by FEMA and its employees (and other federal agencies and employees working at the direction of FEMA) deemed necessary to provide effective disaster relief under the Act would likewise violate the Supremacy Clause. A similar rule applies with respect to state regulation of the particulars of the performance of functions by contractors working directly under the orders of and to the specifications of FEMA. *Leslie Miller, Inc.* v. *Arkansas,* 352 U.S. 187 (1956); *Public Utilities Commission of California* v. *United States,* 355 U.S. 534 (1958).

An argument can be advanced that the general rules concerning the intergovernmental immunity of the United States and its instrumentalities under the Supremacy Clause should not apply with full force to the rendering of disaster assistance under the Act by FEMA. The premise of this argument is that, in providing disaster assistance within a particular state at the request of that state, FEMA is simply acting as an instrumentality of the state and is performing a state, rather than a federal, function. This being the case, the argument runs, its activities should not be regarded as immune from regulation by another state under the Supremacy Clause any more than would be the activities of the requesting state. We reject the premise.

We harbor no doubt that it is within the constitutional competence of the Congress, by law, to make the funds, equipment, expertise, and personnel of the United States available to supplement the efforts of the several states in providing disaster assistance to save lives and protect property and the public health and safety. It is also within the competence of Congress to place responsibility for the execution of that law in a federal official or instrumentality. When it does so, the execution of the law by the responsible official or agency is no less a federal activity than was the delivery of the mail in *Johnson* v. *Maryland, supra,* the operation of a bank in *McCulloch* v. *Maryland, supra,* or the sale of

199

fertilizer in *Mayo* v. *United States, supra.* Congress enacted the Disaster Relief Act of 1974 and entrusted the execution of that law to the President. The President has validly delegated his authority under the Act to the Director of FEMA. When FEMA acts under that delegation to provide disaster relief, it is performing a federal function pursuant to a law validly enacted by Congress. That law is a part of the supreme law of the land and, under the Supremacy Clause, the states may not prohibit or, by regulation, significantly burden the manner of its execution without the consent of the United States.

That the principles of intergovernmental immunity under the Supremacy Clause are applicable to state prohibitions or attempted regulation of FEMA's disaster assistance activities under the Act does not mean that FEMA may totally ignore state law in all cases and on all subjects.

The Supreme Court has stated, in considering the immunity from the state law of government employees engaged in government business, that "It very well may be that, when the United States has not spoken, the subjection to local law would extend to general rules that might affect incidentally the mode of carrying out the employment—as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets."*Johnson* v. *Maryland, supra,* 254 U.S. at 56 (dictum). Other courts have refused to excuse, on Supremacy Clause grounds, federal employees who violated routine state (or local) traffic laws from prosecution when the violations were not necessary to the accomplishment of their federal functions. *E.g., People of Puerto Rico* v. *Fitzpatrick,* 140 F. Supp. 398 (D.C. P.R. 1956); *People* v. *Don Carlos,* 47 Cal. App. 2d 863, 117 P.2d 748 (1941); *Commonwealth* v. *Closson,* 229 Mass. 329, 118 N.E. 653 (1918). *Cf. United States* v. *Hart,* 1 Pet. C.C. Rep. 390 (1817) .(local constable who arrested postal employee for the 1817 version of speeding is not guilty of obstructing the mail, because the federal employee arrested was subject to local safety regulations, Congress not having affirmatively or by fair implication immunized mail carriers from such regulations); 5 Op. Att'y Gen. 554 (1852) (trains carrying U.S. mail are subject to municipal speed regulations). *Compare Montana* v. *Christopher,* 345 F. Supp. 60 (D. Mont. 1972) (in an emergency related to snow removal and flooding, a soldier ordered to use a trailer with defective brakes and signal lights is immune from state prosecution); *State* v. *Burton,* 41 R.I. 303, 103 A. 962 (1918) (dispatch driver for the Navy who, in time of war, is ordered to proceed "with all possible dispatch" is justified in violating state speed law). In light of this case law, caution dictates that federal employees and contractors should, to the extent possible, obey state traffic laws and other state or local laws, the violation of which is not necessary to the accomplishment of the federal function. However, in exigent circumstances in which violations of such laws are necessary to permit FEMA to per-

form essential disaster relief activities under the Act, the federal interest would, we believe, prevail. *Montana* v. *Christopher, supra; State* v. *Burton, supra.* [2]

We would also mention without elaboration two other circumstances in which the Supremacy Clause could not be relied upon by FEMA to shield it from state objections to its disaster relief activities. The first is the case in which proposed disaster relief activity would violate a federal law or regulation binding on FEMA and enforceable against it by the state. The second is the case in which the proposed disaster relief activity would consist of conduct which Congress has specifically subjected, although performed by the federal government, to state regulation. [3]

As stated, this opinion is general. We are prepared, at your request, to address more specific questions as they occur.

THEODORE B. OLSON
*Assistant Attorney General*
*Office of Legal Counsel*

---

[2] For an interesting discussion, in a negligence case, of the relationship between the Supremacy Clause and state traffic regulations, *see Neu* v *McCarthy,* 309 Mass. 17, 33 N.E 2d 570 (1941).

[3] We mention these possibilities only as a cautionary note We have no particular federal statutes or circumstances in mind. We note that the standard for judging whether Congress has subjected federal installations or activities to state regulation is a strict one.

> Because of the fundamental importance of the principles shielding federal installations and activities from regulation by the States, an authorization of state regulation is found only when and to the extent there is "a clear congressional mandate," "specific congressional action" that makes this authorization of state action "clear and unambiguous."

*Hancock* v *Train, supra,* 426 U.S at 179 (footnotes omitted).